## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
| JAVO BEVERAGE COMPANY, INC., | : | Case No. _____ |
| Debtor.[1] | : |  |

**MOTION OF THE DEBTOR FOR AN ORDER (A) AUTHORIZING THE DEBTOR TO SELL ACCOUNTS RECEIVABLE UNDER A POSTPETITION ACCOUNTS RECEIVABLE FACTOR PROGRAM AND GRANTING SECURITY INTERESTS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364 AND 507, BANKRUPTCY RULES 4001, 6003, AND 6004, AND LOCAL RULE 4001-2 AND (B) SCHEDULING A FINAL HEARING AND ESTABLISHING RELATED NOTICE REQUIREMENTS**

Javo Beverage Company, Inc., as debtor and debtor in possession (the "Debtor") in the above-captioned case hereby moves (the "Factor Motion"), pursuant to sections 105, 361, 362, 363, 364(c) and 507 of title 11 of the United States, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), Rules 4001, 6003, and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") for entry of interim and final orders, inter alia:

> (i)      approving a term sheet (the "DIP Term Sheet")[2] outlining the principal terms of a senior secured superpriority debtor-in-possession factor facility on a superiority basis, which shall consist of factor funding of up to $6 million (the "DIP Factor Facility"), by and among the

---

[1]   The last four digits of the Debtor's federal tax identification number are 4292. The Debtor's mailing address and corporate headquarters is 1311 Specialty Drive, Vista, California 92081.

[2]   Unless otherwise defined herein, all capitalized terms used herein have the meanings ascribed to such terms in the Interim Order or DIP Term Sheet. To the extent that there is any conflict between the definitions contained in either the Interim Order or the DIP Term Sheet, the definitions in the DIP Term Sheet shall control.

Debtor and Accord Financial, Inc. (the "DIP Factor"), substantially in the form of **Exhibit "A"** annexed to the proposed interim order (the "Interim Order"), a proposed form of which is attached hereto as **Exhibit A**;

(ii)     authorizing the Debtor to execute and deliver the DIP Term Sheet and the other related credit documents (the "DIP Documents") by and among the Debtor and the DIP Factor, and to perform such other acts as may be necessary or desirable in connection with the DIP Documents;

(iii)     allowing superpriority administrative expense claim status for all obligations owing under the DIP Documents to the DIP Factor (collectively, the "Obligations");

(iv)     granting to the DIP Factor automatically perfected security interests in and liens upon all of the Collateral, including, without limitation, all property constituting "Cash Collateral," as defined in Section 363(a) of the Bankruptcy Code, as set forth herein;

(v)     authorizing the Debtor to pay the discount fees, interest, expenses, and other amounts payable under the DIP Documents as such become due, including, without limitation, closing fees and the reasonable fees and disbursements of the attorneys, advisers, accountants, and other consultants of the DIP Factor and to convey its accounts receivable to the DIP Factor, all to the extent provided in and in accordance with the terms of the DIP Documents;

(vi)     authorizing adequate protection to the DIP Factor for any diminution in value of its interests in the Prepetition Collateral (as defined below), including the Cash Collateral;

(vii)     vacating and modifying the automatic stay imposed by Section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Factor Facility, the DIP Documents and the Interim Order; and

(viii)     scheduling a final hearing (the "Final Hearing") to consider the relief requested in the Factor Motion and a final order approving the relief requested in this Motion (the "Final Order") and approving the form of notice with respect to the Final Hearing.

## JURISDICTION

1.     The Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this case in this Court

is proper under 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested in this Motion are sections 105(a), 361, 362, 363, 364, and 507 of the Bankruptcy Code, as supplemented by Bankruptcy Rule 4001, and Local Rule 4001-2.

## BACKGROUND

2.      On January 24, 2011 (the "Petition Date"), the Debtor filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor is continuing to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.      No trustee, examiner, or creditors' committee has been appointed in this chapter 11 case.

4.      The Debtor is a manufacturer of coffee and tea-based dispensed beverages, drink mixes and flavor systems primarily for the food service industry. Since commencing production in late 2003, the Debtor has regularly suffered from a lack of sufficient working capital resources and has conducted capital raises in some form in every year since 2003 except for 2007. To date, the Debtor has yet to be profitable and cash inflows from operations have been insufficient to cover the company's expenditures.

5.      The factual background regarding the Debtor, including its current and historical business operations and the events precipitating this chapter 11 filing, is set forth in detail in the Declaration of Richard A. Gartrell in Support of the Debtor's Chapter 11 Petition and First Day Pleadings (the "Gartrell Declaration"), and is incorporated herein by reference.

6.     The following chart reflects the approximate amount of obligations of the Debtor as of the Petition Date:

**Secured Debt:**

| | |
|---|---|
| Accord Factor Agreement and Term Loan (as discussed herein) | $1,695,262 |
| Holdings Secured Promissory Note | 500,000 |
| Purchase Money Financing (dispensers) | 1,400,000 |
| Equipment loans | 100,000 |

**Senior Debt:**

| | |
|---|---|
| Senior PIK Notes | 5,838,457[3] |
| Accounts Payable | 2,400,000 |

**Unsecured Debt:**

| | |
|---|---|
| 10 % Subordinated Notes | 23,171,095[4] |
| **Total:** | **$35,104,814** |

## SUMMARY OF THE DEBTOR'S PREPETITION SECURED INDEBTEDNESS

7.     In October 2008, in an effort to relieve liquidity constraints, the Debtor entered into that certain Master Purchase and Sale Agreement dated October 6, 2008 (the "Factor Agreement"), with the DIP Factor and that certain Amended and Restated Promissory Note (Equipment Term Loan) dated April 23, 2010 (the "Term Loan"), by and among the Debtor and the DIP Factor. Pursuant to the Factor Agreement, the DIP Factor made available to the Debtor a factor facility in the amount of up to $6 million to be used for business operations, and pursuant to the Term Loan, the DIP Factor made available to the Debtor a term loan facility in the amount of $595,000.00 (together, the Debtor's obligations owed to the DIP Factor under the Factor Agreement and the Term Loan referred to as the "Prepetition Obligations"). The Factor

---

[3]   For GAAP accounting purposes, the balance is reduced by debt premium which is amortized over 66 months.

[4]   For GAAP accounting purposes, the balance is reduced by debt premium which is amortized over 8 years.

Agreement allows the Debtor to sell and assign accounts receivable, which DIP Factor purchases under the terms described below as absolute owner.

8.    To secure the Factor Agreement and Term Loan, the Debtor granted the DIP Factor first priority liens in substantially all of the Debtor's assets, including without limitation, (a) Reserves and all payments (if any) due or to become due to the Debtor from the Reserves as well as all monies on deposit, holdbacks and credits related to such; (b) all Accounts and related general intangibles whether now existing or hereafter acquired or arising, all interest of replevin held by the Debtor arising in goods, the sale of which gave rise to any Account; (c) all documents, chattel paper, instruments and general intangibles relating to the foregoing; (d) all books and records pertaining to all of the foregoing, including but not limited to computer programs, data and lists; (e) all inventory of the Debtor; all Equipment (as defined in the Factor Agreement) of the Debtor except and excluding equipment the intended primary purpose of which is to dispense beverages in a food service environment; (f) and all proceeds of the foregoing (collectively, the "Prepetition Collateral").

9.    As of January 19, 2011, there is due under the Factor Agreement the sum of $1,324,761.84 and the sum of $370,500 under the Term Loan, each of which Debtor acknowledges to be due and payable without offset or defense.

## THE DEBTOR'S NEED FOR A POSTPETITION FACTOR FACILITY

10.    The Debtor has insufficient cash to finance its operations, maintain business relationships with its vendors, suppliers, and customers, and to pay its employees.

11.    The Debtor urgently needs to continue to have access to the liquidity made available pursuant to the Factor Agreement postpetition in order to continue its business and

operations. Absent the postpetition availability of such liquidity, the Debtor will be unable to continue its operations, and the going-concern value of its business will be lost.

12. Accordingly, the Debtor requests the availability of working capital from the funds generated through the sale of its accounts receivable to the DIP Factor. The DIP Factor Facility will provide more than cash to operate the Debtor's business, the facility will instill a sense of confidence in the Debtor's customers and vendors.

13. In sum, without the immediate access to a postpetition factor facility, the Debtor expects to suffer an acute cash shortage that would immediately and irreparably harm its estate and creditors. Furthermore, the Debtor lacks sufficient funds to meet expenses necessary for the continued operation of its business before the Final Hearing on the Factor Motion can be held, and, therefore, it is essential that the Debtor obtain the proposed interim financing from the DIP Factor. The Debtor's ability to remain viable and preserve the value of its estate for the benefit of creditors depends upon the interim and final relief requested in the Factor Motion.

## SUMMARY OF THE DEBTOR'S PROPOSED DIP FACTOR FACILITY[5]

14. The Debtor has determined, in the exercise of its sound business judgment, that to meet its working capital needs, it requires a postpetition factor facility in substantially the form described herein. The terms contained in the DIP Factor Facility are identical to the factor agreement in place between the parties prepetition. Accordingly, subject to

---

[5] The summaries and descriptions of the terms and conditions of the DIP Term Sheet and the proposed Interim Order set forth in the Factor Motion are intended solely for informational purposes to provide the Court and parties in interest with an overview of significant terms thereof and should only be relied upon as such. The summaries and descriptions are qualified in their entirety by the DIP Term Sheet and the Interim Order. In the event there is a conflict between the Factor Motion and the DIP Term Sheet or the Interim Order, the DIP Term Sheet or the Interim Order, as applicable, shall control in all respects.

the Court's approval, the Debtor has determined to enter into the DIP Term Sheet with the DIP Factor.

15.     The terms of the DIP Factor Facility are more specifically set forth in the DIP Term Sheet attached to the Interim Order as **Exhibit "A."** The key provisions of the DIP Term Sheet are as follows:

(a)     Accounts receivable funding in the amount of the lesser of: (i) the current remaining funding availability under the Factor Agreement and (ii) $6,000,000. DIP Factor may also advance additional amounts at its discretion in accordance with the terms of the Factor Agreement. DIP Factor will continue to collect those accounts receivable it purchased prepetition and seeks relief from the automatic stay to setoff against its prepetition claims any postpetition collections and to retain and apply any amounts remaining to Debtor's outstanding postpetition obligations, free from any claim arising out of or related to §§ 506(c) or 552(b).

(b)     Provided no default or event of default has occurred under the DIP Factor Facility, the DIP Factor Facility will expire upon the earlier of: (i) November 30, 2011 or (ii) the effective date of a plan of reorganization.

(c)     Consistent with the terms in the Factor Agreement, the advance rate for eligible accounts receivable is up to 75% of the face amount of the related invoice and the discount rate is .465%. Discretionary overadvances are up to 25% of the eligible accounts receivable and subject to a .465% discount rate, a drawdown fee of .5% and a per diem of .467%.

(d)     Collateral, identical to the form of the Prepetition Collateral, is comprised of (i) a first priority perfected security interest in all the Seller's prepetition Reserves (as defined in the Factor Agreement) and all payments (if any) due or to become due to Seller from the Reserves as well as all monies on deposit, holdbacks and credits related to such; all Accounts (as defined in the Factor Agreement) and related general intangibles whether now existing or hereafter acquired or arising, all interest of replevin held by the Seller arising in goods, the sale of which gave rise to any Account; all documents, chattel paper, instruments and general intangibles relating to the foregoing; all books and records pertaining to all of the foregoing, including but not limited to computer programs, data and lists; all inventory of Seller; all Equipment (as defined in the Factor Agreement) of Seller except and excluding equipment the intended primary purpose of which is to dispense beverages in a food service environment; (ii) a first priority perfected security interest in all present and future post-petition Reserves and all payments (if any) due or

to become due to Seller from the Reserves as well as all monies on deposit, holdbacks and credits related to such; all Accounts and related general intangibles whether now existing or hereafter acquired or arising, all interest of replevin held by the Seller arising in goods, the sale of which gave rise to any Account; all documents, chattel paper, instruments and general intangibles relating to the foregoing; all books and records pertaining to all of the foregoing, including but not limited to computer programs, data and lists; all inventory of Seller; all Equipment of Seller except and excluding equipment the intended primary purpose of which is to dispense beverages in a food service environment; (iii) a continuing lien on any assets which secured the Prepetition Obligations, whether owned by the Debtor or not; (iv) all proceeds and products of the foregoing; and (v) to be split 50-50 with Coffee Holdings, LLC (the "Junior DIP Lender"), all proceeds of any Avoidance Actions brought pursuant to the Bankruptcy Code (the "Collateral"). Neither the DIP Factor Facility, nor the Collateral shall be subject to any bankruptcy carve-out for the payment of administrative expenses. The Collateral does not include the assets securing the secured revolving promissory note dated January 6, 2011 issued by the Junior DIP Lender to the Seller and amounts in the Control Agreement (as defined in the Junior DIP Lender's DIP Factor Facility).

(e)     Additional DIP funding is being provided by the Junior DIP Lender subject to the terms of the Junior DIP Lender's Term Sheet. Junior DIP Lender will receive liens junior to those of the DIP Factor on the Collateral, and senior liens on all other, unencumbered collateral of the Debtor.

(f)     Obligations under the DIP Factor Facility shall at all times: (i) pursuant to Section 364(c)(1) of the Bankruptcy Code, have priority split 50-50 with the Junior DIP Lender over any and all administrative expenses specified in Section 503(b) or 507(b) of the Bankruptcy Code subject to subordination of the Carve-Out defined in the Junior DIP Lender's Term Sheet dated January 23, 2011; and (ii) be secured by perfected liens on the Debtor's Collateral (of the priority as described above and not including the assets securing the Junior DIP Lender's Prepetition Loan) pursuant to Section 364 of the Bankruptcy Code.

(g)     The cash collateral and any loans under the DIP Factor Facility may be used by any official committee of unsecured creditors (the "Committee") in an amount not to exceed $25,000 (the "Investigation Funds") to investigate (but not prosecute) the validity, perfection, priority, extent, or enforceability of the DIP Factor Facility, the Term Loan, the Factor Agreement or the liens or security interests securing such facilities, or any claims against DIP Factor, provided that such investigation occurs within sixty (60) days after appointment of such Committee. The right to use the

Investigation Funds shall terminate prior to such sixty (60) day term upon the occurrence of an Event of Default.

(h)     The Closing Fee for the DIP Factor Facility is $15,000.00, 100% of which is deemed earned in full on the closing of the DIP Factor Facility. In addition, Debtor is obligated to immediately repay the DIP Factor its costs and expenses, including, but not limited to, attorneys' fees and costs. Debtor is required to immediately remit and advance against such expenses the amount of $7,500.00.

(i)     The following are events of default: (i) Failure to pay principal, interest or fees when due; (ii) material inaccuracy of representations or warranties; (iii) violation of covenants within the Term Note, Factor Agreement or any other instrument executed in connection with the Prepetition Obligations or the DIP Factor Facility; (iv) the Debtor's allegation in any pleading or other writing, or the finding or conclusion by the Bankruptcy Court, that any loan or security document of DIP Factor (whether relating to the DIP Factor Facility or the Prepetition Obligations) is not valid, binding or enforceable; (v) filing of a motion to dismiss the Bankruptcy Case or convert it to one under chapter 7 of the Bankruptcy Code; (vi) appointment of a chapter 11 trustee or an examiner with enlarged powers relating to the operation of the business of the Debtor; (vii) granting of relief from automatic stay to permit foreclosure on any material assets of Debtor; (viii) entry of any order, without DIP Factor's prior consent, reversing, amending, supplementing, staying or vacating the Interim Order or the Final Order (defined below); (ix) other than as set forth in the Debtor's Motion for Entry of an Order Authorizing the Debtor to Honor and Perform Certain Prepetition Obligations to Customers and Continue Customer Programs and the Debtor's Motion for Entry of an Order Authorizing the Debtor to Honor Prepetition Obligations for Certain Critical Vendors, Debtors' Motion for Authority to Pay Prepetition Wages and related obligations, or otherwise agreed to by DIP Factor, payment of prepetition debt to any creditor (other than the payment to the Junior DIP Lender for the dollar-for-dollar roll-up of the Prepetition Loan as provided for in the Junior DIP Lender's postpetition financing facility), other than the Prepetition Obligations and other than pursuant to a confirmed plan of reorganization or as approved by DIP Factor and the Bankruptcy Court; (xii) the occurrence in any ERISA plan, if any, of any unfunded deficiency in excess of $100,000.00; (xiii) the occurrence of any material adverse effect, as defined in the Junior DIP Lender's loan documents; (xiv) the submission by the Debtor of any motion or other pleading attacking the validity or enforceability of any of the documents executed in connection with the Prepetition Obligations, the DIP Factor Facility or the Final Order, or of any order granting DIP Factor adequate protection of its interest in the Collateral; and (xvi) any default under any cash collateral order (xvii) the filing (with respect to all plans of reorganization filed by

the Debtor) or confirmation (with respect to all plans filed by any person or entity other than the Debtor) of a plan of reorganization which contains a treatment of the obligations under the DIP Factor Facility in a manner inconsistent with that provided for in the DIP Factor Facility documents, or, which, at a minimum, does not provide for the indefeasible payment in full of any DIP Factor Facility Obligations by a date or time any later than the "effective date" of such plan; (xviii) the entry of an order authorizing the sale of all or substantially all of the assets of the Debtor which does not provide that the proceeds of sale, net of the costs approved by the DIP Factor, if any, are paid to DIP Factor in respect of the DIP Factor Facility and (xix) the failure of the Debtor to obtain a Final Order within 35 calendar days following the petition date, unless otherwise agreed to by DIP Factor. Additional events of default include any bid/sales procedure, motion, objection or any pleading that opposes or challenges in any way the right of DIP Factor to credit bid pursuant to section Bankruptcy Code § 363(k) with respect to its Collateral.

## **REQUEST FOR APPROVAL OF PROPOSED DIP FACTOR FACILITY**

16.    As described above, it is essential to the success of this case that the Debtor immediately maintain access to the existing factor facility postpetition, without which the Debtor will be unable to operate or generate sufficient cash-flow.   The Debtor's continuing viability and ability to maximize the value of its estate for the benefits of its creditors thus depends heavily upon the expeditious approval of the DIP Factor Facility and the related actions requested herein.

17.    Section 364 of the Bankruptcy Code distinguishes among (a) obtaining unsecured credit in the ordinary course of business, (b) obtaining unsecured credit out of the ordinary course of business and (c) obtaining credit with specialized priority or with security. If a debtor in possession cannot obtain postpetition credit on an unsecured basis, pursuant to Section 364(c) of the Bankruptcy Code, a court may authorize a debtor in possession to obtain credit or incur debt, repayment of which is entitled to super-priority administrative expense status or is secured by a senior lien on unencumbered property or a junior lien on encumbered property, or combination of the foregoing.   Pursuant to section 364(d) of the Bankruptcy Code, a court may

authorize a debtor in possession to obtain credit or incur debt secured by a senior or equal lien on property of the estate that is already subject to a lien.

18.     As a condition to entering into the DIP Factor Facility, the Debtor must obtain authorization, pursuant to sections 364(c) and (d) of the Bankruptcy Code, to (a) grant the DIP Factor automatically perfected security interests in and liens upon all of the DIP Collateral as summarized above and (b) grant the Obligations allowed super-priority administrative expense claim status in this case or any successor case.

### *Approval Under Section 364(c) of the Bankruptcy Code*

19.     The statutory requirement for obtaining post-petition credit under section 364(c) of the Bankruptcy Code is a finding, made after notice and hearing, that the debtor-in-possession is "unable to obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense." See In re Garland Corp., 6 B.R. 456, 461 (B.A.P. 1st Cir. 1980) (secured credit under section 364(c)(2) is authorized, after notice and hearing, upon showing that unsecured credit cannot be obtained); In re Ames Dep't Stores, Inc., 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) (noting that "although a debtor is not required to seek credit from every possible source, a debtor must show that it has made a reasonable effort to seek other sources of credit available under section 364(a) & (b)"); In re Crouse Group, Inc., 71 B.R. 544, 549 (Bankr. E.D. Pa. 1987) (debtor seeking secured credit under section 364(c) of the Bankruptcy Code must prove that it was unable to obtain unsecured credit pursuant to section 364(b) of the Bankruptcy Code).

### *The Debtor Was Unable to Obtain a Necessary Postpetition Factor Facility on an Unsecured Basis under 11 U.S.C. § 364(a) or (b)*

20.     As the evidence at the Final Hearing will show, the Debtor could not have obtained a factor facility of the type and magnitude required in this case on an unsecured basis.

21.     To show that the credit required is not obtainable on an unsecured basis, a debtor need only demonstrate "by good faith effort that credit was not available without" the protections of section 364(c) of the Bankruptcy Code. Bray v. Shenandoah Fed. Say. & Loan Ass 'n (In re Snowshoe Co.), 789 F.2d 1085, 1088 (4th Cir. 1986). Thus, "[t]he statute imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable." Id at 1088; see also Ames, 115 B.R. at 40 (holding that debtor made a reasonable effort to secure financing where it approached four lending institutions, was rejected by two, and selected the least onerous financing option from the remaining two lenders). Moreover, where few lenders are likely to be able and willing to extend the necessary credit to the debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct an exhaustive search for financing." In re Sky Valley, Inc., 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988), aff'd sub nom, Anchor Savings Bank FSB v. Sky Valley, Inc., 99 B.R. 117, 120 n.4 (N.D. Ga. 1989).

22.     Other than the proposed DIP Factor Facility and the proposed postpetition funding by the Junior DIP Lender, there are no viable financing alternatives available to the Debtor under the circumstances. The Debtor has been exploring financial alternatives for several months, and is intimately familiar with the lack of factoring available to it. The prepetition factor facility has been in place since 2008, and the postpetition terms shall be identical to those in place since that time. Moreover, the DIP Factor is very familiar with the Debtor's business and its cash-flow needs. For these reasons, as well as the nature and state of the Debtor's business operations, the immediacy of the Debtor's factoring needs, and the liens of the DIP Factor on the Prepetition Collateral, the Debtor is convinced that other than the proposed DIP Factor Facility, it would be entirely unable to obtain a factor facility to address its urgent liquidity needs.

23.     Moreover, as noted above, virtually all of the Debtor's assets are encumbered by liens and security interests granted to the DIP Factor.  Thus, even if alternative debtor-in-possession financing were available on favorable terms and conditions and could be consummated in a time frame required to address the Debtor's immediate liquidity needs, obtaining such financing would likely result in a difficult and protracted priming contest with the DIP Factor, the results of which could not be predicted with certainty.   Any uncertainty occasioned by protracted financing litigation would be extremely damaging to the Debtor, immediately jeopardizing its Chapter 11 case at the outset.

### *The Postpetition DIP Factor Facility is Necessary to Preserve Assets of the Debtor's Estate*

24.     It cannot reasonably be disputed that the Debtor has an immediate need for access to a factor facility.  The Debtor has significant cash needs and the existing factor facility has been in place since 2008.  Continued access to such a facility to fund operations is critical to the Debtor's survival.   In the absence of immediate access to such liquidity, the Debtor's suppliers may refuse to supply the inventory and services required to maintain operations.

25.     As stated above, the DIP Factor Facility is also essential so that the Debtor can immediately instill its employees, suppliers, and customers with confidence in the Debtor's ability to meet its obligations.  Absent such confidence, the Debtor may not have the resources or support necessary to maintain operations and preserve its value as a going concern.

26.     The success of this case thus depends on the confidence of the Debtor's employees, vendors, and customers.  If the Factor Motion is denied or delayed, that confidence may be destroyed, and the success of this chapter 11 case might be irreparably damaged.   In contrast, once the DIP Factor Facility is approved, the Debtor's ability to provide its employees, vendors, customers, and other important stakeholders with the necessary confidence will be

assured; this is particularly so since the postpetition facility will be the same as the facility in place since 2008. The Debtor's need for access to the DIP Loans is, therefore, immediate.

### *Application of the Business Judgment Standard*

27.     After appropriate and extensive investigations and analysis, robust good faith, and arm's length negotiations between the Debtor and the DIP Factor, the Debtor's management has concluded that the proposed DIP Factor Facility is the best alternative available in the circumstances of this case. Bankruptcy courts routinely defer to a debtor's business judgment on most business decisions, including the decision to borrow money, unless such decision is arbitrary and capricious. See In re Trans World Airlines, Inc., 163 B.R. 964, 974 (Bankr. D. Del. 1994) (noting that the interim loan, receivables facility and asset based facility were approved because they "reflect[ed] sound and prudent business judgment on behalf of TWA … [were] reasonable under the circumstances and in the best interest of TWA and its creditors"); In re TM Carlton House Partners, LTD, 91 B.R. 349, 357 (Bankr. E.D. Pa. 1988) (holding that due to the debtor's distinct awareness of its own financial needs, the court would not second-guess its business judgment to put aside cash to effectuate a refinancing of its debts); cf. Group of Institutional Investors v. Chicago Mil. St. P. & Pac. Ry., 318 U.S. 523, 550 (1943) (holding that decisions regarding the rejection or assumption of a lease is left to the business judgment of the debtor); In re Simasko Prod. Co., 47 B.R. 444, 449 (D. Colo. 1985) ("Business judgments should be left to the board room and not to this Court"); In re Lifeguard Indus. Inc., 37 B.R. 3, 17 (Bankr. S.D. Ohio 1983) (same); In re Curlew Valley Assocs., 14 B.R. 506, 513-14 (Bankr. D. Utah 1981) (holding that courts generally will not second-guess a debtor in possession's business decisions when those decisions involve "a business judgment made in good faith, upon a reasonable basis, and within the scope of his authority under the Code"). In

fact, "[m]ore exacting scrutiny would slow the administration of the Debtor's estate and increase its cost, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially." Richmond Leasing Co. v. Capital Bank, NA., 762 F.2d 1303, 1311 (5th Cir. 1985).

28.     The terms of the proposed DIP financing represented by the DIP Factor Facility are in the best interests of the Debtor's estate. Accordingly, the Debtor should be granted authority to enter into the DIP Term Sheet and obtain funds from the DIP Factor on the secured, administrative "superpriority" basis described above, pursuant to sections 364(c) and (d) of the Bankruptcy Code.

## *Highlighted Provisions Under Rule 4001-2*

29.     Local Rule 4001-2(a) states in pertinent part:

(i) All Financing Motions must (a) recite whether the proposed form of order and/or underlying cash collateral stipulation or loan agreement contains any provision of the type indicated below, (b) identify the location of any such provision in the proposed form of order, cash collateral stipulation and/or loan agreement and (c) justify the inclusion of such provision:

(A) Provisions that grant cross-collateralization protection (other than replacement liens or other adequate protection) to the prepetition secured creditors (i.e., clauses that secure prepetition debt by postpetition assets in which the secured creditor would not otherwise have a security interest by virtue of its prepetition security agreement or applicable law);

(B) Provisions or findings of fact that bind the estate or other parties in interest with respect to the validity, perfection or amount of the secured creditor's prepetition lien or the waiver of claims against the secured creditor without first giving parties in interest at least seventy-five (75) days from the entry of the order and the creditors' committee, if formed, at least sixty (60) days from the date of its formation to investigate such matters;

(C) Provisions that seek to waive, without notice, whatever rights the estate may have under 11 U.S.C. § 506(c);

(D) Provisions that immediately grant to the prepetition secured creditor liens on the debtor's claims and causes of action arising under 11 U.S.C. §§ 544, 545, 547, 548 and 549;

(E) Provisions that deem prepetition secured debt to be postpetition debt or that use postpetition loans from a prepetition secured creditor to pay part or all of that secured creditor's prepetition debt, other than as provided in 11 U.S.C. § 552(b);

(F) Provisions that provide disparate treatment for the professionals retained by a creditors' committee from those professionals retained by the debtor with respect to a professional fee carve-out; and

(G) Provisions that prime any secured lien without the consent of that lienor.

30.     Pursuant to Local Rule 4001-2(a)(i)(D), paragraph 5 of the Interim Order and the DIP Term Sheet provide that the Debtor will request the Bankruptcy Court's authority to grant DIP Factor the Junior DIP Lender a 50/50 security interest in claims or causes of action arising under section 549 of the Bankruptcy Code at the Final Hearing.  Pursuant to Local Rule 4001-2(a)(i)(C), paragraph 40 of the Interim Order provides that the Debtor will request the Bankruptcy Court's authority to grant DIP Factor a waiver of the applicability of 11 U.S.C. 506(c) at the final hearing.

31.     Pursuant to Local Rule 4001-2(a)(i)(E), paragraph 4(a) of the Interim Order and the DIP Term Sheet provide that the Debtor will request the Bankruptcy Court's authority to allow the DIP Factor to apply a portion of the new money advanced postpetition pursuant to the DIP Factor Facility to amounts owed under the prepetition Term Loan on a dollar-for dollar basis.  This is consistent with the terms of the Factor Agreement and consistent with the parties' desire to maintain the factor arrangement as currently constructed.

32.     Pursuant to Local Rule 4001-2(a)(i)(F), paragraph 4(c) of the Interim Order and the DIP Term Sheet provide that the DIP Factor is providing a carve-out in an amount

not to exceed $25,000 to be used by any official committee of unsecured creditors (a "Committee") for the investigation (but not prosecution) of the validity, perfection, priority, extent, or enforceability of the DIP Factor Facility, the Term Loan, the Factor Agreement, the liens or security interests securing such facilities, or any claims against the DIP Factor. In addition, Local Rule 4001-2(a)(i)(F), is implicated under paragraph 9 of the Interim Order with respect to payment of the DIP Factor's professionals' fees.

33.     The justification for the provisions of the DIP Factor Facility for which disclosure is required pursuant to Local Rule 4001-2 is the immediate and critical need for this financing. As discussed above, the Debtor was unable to secure a postpetition factor facility on terms more favorable than that obtained from the DIP Factor, and such facility is critical to the maximization of recoveries for the Debtor's creditors. Indeed, without this facility, the Debtor will be forced to immediately shut down and liquidate, and any significant returns for unsecured creditors will almost certainly be eliminated. Accordingly, the facts and circumstances of this case justifies the inclusion of the terms that require disclosure under Local Rule 4001-2, and these terms of the DIP Term Sheet should be approved

## APPROVAL OF ADEQUATE PROTECTION

34.     In exchange for the Debtor's use of the Prepetition Collateral, the DIP Factor is entitled to receive adequate protection pursuant to sections 361, 363, and 364 of the Bankruptcy Code, for any diminution in the value of each of its interests in the Prepetition Collateral (including Cash Collateral) resulting from the Debtor's use, sale, or lease (or other decline in value) of such collateral.

35.     The Debtor proposes to provide the DIP Factor with adequate protection in accordance with sections 361, 363, and 364 of the Bankruptcy Code. To that end, the Debtor

and the DIP Factor have negotiated, and the Debtor requests the Court approve, as of the Petition Date, certain protections of the DIP Factor's interest in the Prepetition Collateral from any diminution in value of its interest in the Prepetition Collateral. Such adequate protection, as described more fully in the Interim Order, may be summarized as (i) the postpetition replacement liens in the Prepetition Collateral or such other collateral as may be necessary to adequately protect DIP Factor's interests, not subject to carve-out, (ii) a superpriority claim subject to carve-out for administrative claims of professionals of the Debtor and a Committee, if any, (iii) lien and claim recognition, and (iv) payment of fees and expenses, all as are described hereinabove and in the DIP Term Sheet.

## THE DEBTOR SHOULD BE PERMITTED TO ENTER INTO INTERIM TRANSACTIONS UNDER THE DIP TERM SHEET

36.     This Court is empowered to conduct a preliminary expedited hearing on the Factor Motion and authorize the Interim Order. Specifically, Bankruptcy Rule 4001(c) governs the procedures for securing authorization to obtain debtor-in-possession financing and provides, in relevant part:

> The court may commence a final hearing on a motion for authority to obtain credit no earlier than 15 days after service of the motion. If the motion so requests, the court may conduct a hearing before such 15 day period expires, but the court may authorize the obtaining of credit only to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing.

Fed. R. Bankr. P. 4001(c).

37.     Pending a final hearing, the Debtor requires access to liquidity under the DIP Factor Facility for, inter alia, payment of vital services and other working capital needs, as well as to comply with the DIP Term Sheet's requirement to repay the Term Loan. It is essential that the Debtor immediately stabilize its operations and resume paying for ordinary, postpetition

operating expenses in order to preserve the value of the Debtor's estate for the benefit of all the Debtor's creditors.

38.     Absent immediate access to the factor funding for its continuing business operations, the Debtor will be unable to pay operating expenses and, therefore, unable to continue to conduct its businesses pending the Final Hearing.  Consequently, if interim relief is not obtained, the Debtor, its estate, its creditors, its business, its employees, and its assets will suffer immediate and irreparable harm.

39.     Bankruptcy Rule 4001(c) permits a court to approve a debtor's request for financing during the fourteen-day period following the filing of a motion requesting authorization to obtain postpetition financing "only to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing."  Bankruptcy Rule 4001(c)(2).  The Debtor's current financial distress and acute need for post-petition liquidity provides ample evidence to support the conclusion that the Debtor will avoid immediate and irreparable harm only if the Court authorizes the relief provided for in the Interim Order.

40.     Accordingly, the Debtor requests that, pending the Final Hearing, the Court schedule an interim hearing on the Petition Date or as soon thereafter as is practical to consider the Debtor's request for authorization to obtain an interim factor facility under the DIP Term Sheet up to a maximum the maximum amount set forth therein in order to sustain operations and comply with terms and conditions of the DIP Term Sheet.

## GOOD FAITH

41.     The Debtor submits that the terms and conditions of the DIP Term Sheet, and the fees paid and to be paid thereunder, are the best available to the Debtor under the circumstances.  As stated above, the Debtor and the DIP Factor negotiated the terms and

conditions of the DIP Term Sheet in good faith and at arm's length. Moreover, the Debtor's decision to enter into the DIP Term Sheet was an exercise of the Debtor's prudent business judgment. Therefore, the DIP Factor should be accorded the benefits of section 364(e) of the Bankruptcy Code to the extent any or all of the provisions of the DIP Term Sheet, or any interim or final order of this Court pertaining thereto, are hereafter modified, vacated, stayed or terminated by subsequent order of this or any other court

## REQUEST FOR MODIFICATION OF THE AUTOMATIC STAY

42. The Interim Order contemplates a modification of the automatic stay established pursuant to section 362 of the Bankruptcy Code, to the extent necessary, to effectuate all of the terms and provisions of the Interim Order, including, without limitation, to (a) permit the Debtor to grant the adequate protection set forth herein; (b) permit the Debtor to perform such acts as the DIP Factor may request in its sole discretion to assure the perfection and priority of the liens granted herein; (c) permit the Debtor to incur all liabilities and obligations to the DIP Factor under the DIP Documents, the DIP Factor Facility, and the Interim Order; and (d) authorize the DIP Factor to retain and apply payments made in accordance with the terms of the DIP Term Sheet and Interim Order.

43. Stay modification provisions of this type are customary features of postpetition debtor-in-possession financing facilities and, in the Debtor's business judgment, are reasonable under the circumstances. Accordingly, the Court should modify the automatic stay to the extent contemplated by the Interim Order.

## REQUEST TO WAIVE OR DEEM SATISFIED
## BANKRUPTCY RULES 6003(b), 6004(a), AND 6004(h)

44. In order to successfully implement the foregoing, the Debtor respectfully requests that the Court waive the notice requirements provided for by Bankruptcy Rule 6004(a)

and the 14-day stay provided for by Bankruptcy Rule 6004(h). Further, the Debtor submits that because immediate and irreparable harm will occur if the Interim Order is not entered, Bankruptcy Rule 6003 is satisfied. The Debtor believes, for the reasons set forth above, that ample justification exists for the Court to waive Bankruptcy Rules 6003(b), 6004(a), and 6004(h).

## NOTICE

45.     Notice of this Motion has been given to:  (i) the twenty-five (25) largest creditors listed in the Debtor's list of unsecured creditors; (ii) the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"); (iii) Coffee Holdings LLC, the DIP Lender; (iv) counsel to the DIP Lender;  (v) the Internal Revenue Service; (vi) all known parties that may be asserting a lien against the DIP Collateral; (vii) all appropriate state taxing authorities; and (viii) any other party that has filed a request for notice pursuant to Bankruptcy Rule 2002 or is required to receive notice under the Bankruptcy Rules (collectively, the "Initial Notice Parties"). The Debtor submits that, under the circumstances, no further notice of the hearing on the interim financing is necessary and requests that any further notice be dispensed with and waived.

## REQUEST FOR FINAL HEARING

46.     Pursuant to Bankruptcy Rule 4001(c)(2), the Debtor requests that the Court set a date for the Final Hearing that is no later than 25 days from the Petition Date and authorize it to mail copies of the signed Interim Order, which fixes the time, date and manner for the filing of objections, to (i) the Initial Notice Parties; (ii) any party that has filed prior to such date a request for notices with this Court; and (iii) counsel for any official committee(s). The Debtor requests that the Court consider such notice of the Final Hearing, including without

limitation, notice that the Debtor will seek approval at the Final Hearing a waiver of rights under Bankruptcy Code section 506(c), to be sufficient notice under Bankruptcy Rule 4001 and Local Rule 2002-1.

## CONCLUSION

WHEREFORE, the Debtor respectfully requests that the Court (i) enter an order substantially in the form of the Interim Order annexed hereto as **Exhibit "A"**;[6] (ii) schedule the Final Hearing, (iii) after the Final Hearing, enter a Final Order substantially in the form of the Interim Order and as filed with the Court prior to the Final Hearing; and (iv) grant such other and further relief as is just and proper.

[Signature follows]

---

[6] As may be amended upon further negotiations between the Debtor, the Junior DIP Lender, and the DIP Factor.

Dated: January 24, 2011  
       Wilmington, Delaware

Respectfully submitted,

_____

Robert J. Dehney, (DE No. 3578)  
Matthew B. Harvey (DE No. 5186)  
MORRIS, NICHOLS, ARSHT & TUNNELL LLP  
1201 North Market Street, 18th Floor  
P.O. Box 1347  
Wilmington, DE  19899-1347  
Telephone:  (302) 658-9200  
Facsimile:  (302) 425-4673  
Email: rdehney@mnat.com  
       mharvey@mnat.com

-and-

Debra A. Riley (CA No. 151925)  
ALLEN MATKINS LECK GAMBLE MALLORY  
    & NATSIS LLP  
501 West Broadway, 15th Floor  
San Diego, CA 92101-3541  
Telephone:  (619) 233-1155  
Facsimile:  (619) 233-1158  
Email: driley@allenmatkins.com

*Proposed Counsel for Debtor and*  
*Debtor in Possession*