## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| JAVO BEVERAGE COMPANY, INC., | Case No. 11-10212 (BLS) |
| Debtor.[1] | |
| | Re: D.I. 9 & 33 |

### FINAL ORDER (I) AUTHORIZING THE DEBTOR TO SELL ACCOUNTS RECEIVABLE UNDER A POSTPETITION ACCOUNTS RECEIVABLE FACTOR PROGRAM WITH ACCORD FINANCIAL, INC.; (II) GRANTING LIENS AND PROVIDING SUPER-PRIORITY ADMINISTRATIVE EXPENSE STATUS; (III) GRANTING ADEQUATE PROTECTION AND RELATED RELIEF

Upon the motion (the **"Motion"**), dated January 24, 2011 [Docket No. 9], of Javo Beverage Company, Inc., as debtor and debtor-in-possession (the **"Debtor"**), (A) for the entry of this Interim Order and the Final Order authorizing the Debtor to (i) sell accounts receivable under a postpetition accounts receivable factor program with Accord Financial, Inc. (the **"DIP Factor"**) in an amount not to exceed the lesser of (i) the current remaining funding available under the Factor Agreement[2] and (ii) $6,000,000.00 (the **"DIP Factor Facility"**) pursuant to sections 363 and 364 of title 11 of the United States Code (the **"Bankruptcy Code"**) by entering into a term sheet (the **"DIP Term Sheet"**) that outlines the principal terms for a senior secured superpriority debtor-in-possession factor facility, which DIP Factor Facility shall provide necessary liquidity and working capital for the Debtor's operations (the DIP Term Sheet, as may

---

[1]  The last four digits of the Debtor's federal tax identification number are 4292. The Debtor's mailing address and corporate headquarters is 1311 Specialty Drive, Vista, California 92081.

[2]  Unless otherwise defined herein, all capitalized terms used herein have the meanings ascribed to such terms in the Post-Petition Master Purchase and Sale Agreement, a copy of which is attached to the Interim Order as Exhibit 1.

be memorialized in a definitive "Post-Petition Master Purchase and Sale Agreement" and related documents and instruments, as may be amended, supplemented or otherwise modified from time to time, the **"DIP Factor Agreement,"** with the DIP Term Sheet and DIP Factor Agreement sometimes referred to as the **"DIP Factor Documents"** and the DIP Factor Documents, Factor Agreement, and Term Loan referred to collectively as the **"Documents"**), in the form annexed hereto as **Exhibit 1** between the Debtor and the DIP Factor (Coffee Holdings LLC, as another source of DIP financing is hereafter referred to as the **"Junior DIP Lender"**); (ii) grant superpriority claims to and on behalf of and for the benefit of the DIP Factor in the Collateral (as defined herein) in accordance with the DIP Term Sheet, the Interim Order [Docket No. 33] and a Final Order to secure any and all of the Debtor's obligations, indebtedness and liabilities under the DIP Term Sheet (the **"Obligations"**), (iii) subject to the terms and limitations herein, use Cash Collateral (as defined below) and (iv) pending a final hearing on the Motion (the **"Final Hearing"**), enter into postpetition financing under the DIP Term Sheet until and including the date on which the Final Order is entered, (B) requesting the provision of adequate protection to the DIP Factor; and (C) in accordance with Rule 4001(c)(2) of the Federal Rules of Bankruptcy Procedure (the **"Bankruptcy Rules"**), requesting that this Court schedule the Final Hearing and approve notice with respect thereto; and the Court having considered the Motion and the exhibits attached thereto, including, without limitation, the DIP Term Sheet; and an interim hearing to consider approval of having been held and concluded on January 25, 2011 (the **"Interim Hearing"**); and due and sufficient notice of the Motion and the Interim Hearing having been given; and further, with all notice requirements set forth in the Interim Order having been complied with and no objections to the Motion having been filed and a Final Hearing having been held by this Court on February 11, 2011 (the **"Final**

**Hearing**"); and after due deliberation and consideration by the Court of the foregoing and any and all pleadings filed with the Court and all of the proceedings before it, and good and sufficient cause appearing therefor,

THE DEBTOR STIPULATES AND THE COURT HEREBY FINDS, DETERMINES AND CONCLUDES:[3]

A.      On January 24, 2011 (the **"Petition Date"),** the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtor is continuing in the management and possession of its business and property as debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Debtor's chapter 11 Case.

B.      Consideration of this Motion constitutes a "core proceeding" as defined in 28 U.S.C. §§ 157(b)(2)(A), (D), (G), (K), (M) and (O). This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.      Notice of the Final Hearing was served on or about January 25, 2011 via regular U.S. Mail on the following parties in interest: (i) the United States Trustee, (ii) creditors holding the 25 largest unsecured claims against the Debtor, or their legal counsel, if known, (iii) any party that has filed a lien against any of the Debtor's assets, (iv) all local taxing authorities, (v) the Internal Revenue Service, (vii) counsel to the Junior DIP Lender, and (viii) any party that has requested notice and service of papers in this Case.  Under the circumstances, such notice constitutes sufficient and adequate notice pursuant to Bankruptcy Rules 2002, 4001(b), (c) and (d) and 9014 and section 102(1) of the Bankruptcy Code, as required by sections 363(b) and 364(d) of the Bankruptcy Code, and no further notice of the Motion is necessary or

---

[3]      Findings of fact contained herein shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact.

required.

D.    Subject to the time limitations and other provisions specified in paragraph 14 below, the Debtor acknowledges, admits and confirms as follows:

i.    As of January 19, 2011, (a) there were net funds employed under the Factor Agreement in the amount of $1,326,827.61 plus (x) accrued and unpaid interest thereon and (y) fees, costs and expenses;  (b) the Overadvance due under the Factor Agreement was $38,267.30 plus (x) accrued and unpaid interest thereon and (y) fees, costs and expenses; and (c) the sum of $370,500 was due under the Term Loan plus (x) accrued and unpaid interest thereon and (y) fees, costs and expenses (collectively, the **"Prepetition Obligations"**).

ii.    Pursuant to the Factor Agreement and the Term Loan, the DIP Factor holds perfected, valid, enforceable, and non-avoidable first priority liens on and security interests (the **"Prepetition Liens"**) in substantially all of the Debtor's assets, including without limitation, (a) Reserves and all payments (if any) due or to become due to the Debtor from the Reserves as well as all monies on deposit, holdbacks and credits related to such; (b) all Accounts and related general intangibles whether now existing or hereafter acquired or arising, all interest of replevin held by the Debtor arising in goods, the sale of which gave rise to any Account; (c) all documents, chattel paper, instruments and general intangibles relating to the foregoing; (d) all books and records pertaining to all of the foregoing, including but not limited to computer programs, data and lists; (e) all inventory of the Debtor; all Equipment (as defined in the Factor Agreement) of the Debtor except and excluding equipment the intended primary purpose of which is to dispense beverages in a food service environment; (f) and all proceeds of the foregoing (collectively, the **"Prepetition Collateral"**).

iii.    The Prepetition Liens of the DIP Factor are (i) valid, binding,

perfected, enforceable liens and, subject to section 552 of the Bankruptcy Code, all postpetition proceeds, products, offspring, rents and profits thereof and (ii) not subject to avoidance, recharacterization, reduction, disallowance, impairment, or subordination under the Bankruptcy Code or applicable non-bankruptcy law. The Factor Agreement and Term Loan are valid and binding agreements and obligations of the Debtor. For purposes of section 506(b), the value of the Prepetition Collateral exceeds the amount of the Prepetition Obligations.

      iv.     The Prepetition Obligations constitute legal, valid, and binding obligations of the Debtor, enforceable in accordance with their terms and no objection, offset, defense, or counterclaim of any kind or nature to the Prepetition Obligations exists. The Prepetition Obligations, and any amounts previously paid to the DIP Factor on account thereof or with respect thereto, are not subject to avoidance, recharacterization, reduction, disallowance, impairment, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law. The Debtor does not have, hereby forever releases, and is forever barred from bringing, any claims, counterclaims, causes of action, defenses, or setoff rights, whether arising under the Bankruptcy Code or otherwise, with respect to the Prepetition Obligations or against the DIP Factor and its respective predecessors-in-interest, affiliates, subsidiaries, agents, officers, directors, employees, and attorneys with respect to the Prepetition Obligations, the Factor Agreement, and the Term Loan.

      v.     The DIP Factor perfected its security interests and Prepetition Liens in and on the Prepetition Collateral by, among other methods, the filing of UCC-1 financing statement against the Debtor and such collateral with the proper offices for the perfection of such security interests and Prepetition Liens.

      E.     <u>Reasonable Terms; Good Faith.</u>

(i)     The terms of the proposed DIP Factor Facility, as modified by this Order, are fair and reasonable, are supported by reasonably equivalent value and fair consideration, and reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties.

(ii)     The DIP Factor Facility has been negotiated in good faith and at arm's-length among the Debtor, the DIP Factor, and the Junior DIP Lender.

(iii)     All of the Debtor's indebtedness and other obligations to the DIP Factor arising under, in respect of or in connection with (i) the DIP Factor Documents and all related guaranty, security and other agreements, documents, notes and instruments together with all exhibits, schedules, annexes and appendices thereto, delivered pursuant hereto or thereto, or in connection herewith or therewith; and (ii) this Order (collectively, the **"Postpetition Obligations,"** with the Prepetition Obligations and Postpetition Obligations referred to collectively as the **"Obligations"**) shall be deemed to have been extended by the DIP Factor in good faith, as that term is used in section 364(e) of the Bankruptcy Code.

F.     Protections of Section 364(e) of the Bankruptcy Code. All of the advances extended postpetition by the DIP Factor pursuant to the Postpetition Obligations after entry of this Order will be extended by the DIP Factor in good faith and in express reliance upon the protections afforded pursuant to section 364(e) of the Bankruptcy Code and, accordingly, all of the Postpetition Obligations shall be entitled to the full protections of section 364(e) of the Bankruptcy Code in the event this Final Order or any provision hereof is vacated, reversed or modified, whether on appeal or otherwise and upon execution and delivery of the DIP Factor Agreement, the DIP Factor Agreement as modified by this Order shall constitute valid and binding obligations of the Debtor, enforceable against the Debtor in accordance with the terms

of the DIP Factor Documents, this Order, and section 364(e) of the Bankruptcy Code.

G.     An immediate and critical need exists for the Debtor to continue to obtain funds in order to continue the operation of its business. The use of "cash collateral" (as defined by section 363(a) of the Bankruptcy Code and including any and all prepetition and postpetition proceeds of the Prepetition Collateral (the **"Cash Collateral")**), alone would be insufficient to meet the Debtor's immediate postpetition liquidity needs. The Debtor is unable to obtain the required funds (i) in the forms of (a) unsecured credit or debt allowable under section 503(b)(1) of the Bankruptcy Code, (b) an administrative expense pursuant to section 364(a) or (b) of the Bankruptcy Code, (c) unsecured debt having the priority afforded by section 364(c)(1) of the Bankruptcy Code or (d) debt secured as described in section 364(c)(2) or (3) of the Bankruptcy Code or (ii) on terms more favorable than those offered by the DIP Factor under the DIP Term Sheet, this Final Order, and all other agreements, documents, notes or instruments executed and delivered pursuant hereto or thereto or in connection herewith or therewith (collectively, the DIP Term Sheet, the DIP Factor Agreement, this Final Order, and any other agreements, documents, notes or instruments executed and delivered pursuant to this Final Order, the **"Postpetition Factor Documents"**).

H.     The Debtor has requested that, pursuant to the terms of the Postpetition Factor Documents, the DIP Factor make advances and provide other financial accommodations to the Debtor. The ability of the Debtor to continue its business and reorganize under chapter 11 of the Bankruptcy Code depends upon the Debtor obtaining such advances. The DIP Factor is willing to make such advances and provide such other financial accommodations only on a first-priority secured and superpriority unsecured basis, as more particularly described herein, pursuant to the terms and conditions of the Postpetition Factor Documents. Accordingly, the

relief requested in the Motion is necessary, essential and appropriate for the continued operation of the Debtor's business, the management and preservation of its assets and properties, and is in the best interests of the Debtor, its estate, and creditors.

I.    It is in the best interests of the Debtor's estate that the Debtor be allowed to sell accounts receivable to provide liquidity to finance its operations under the terms and conditions set forth herein and in the Postpetition Factor Documents. The relief requested by the Motion is necessary to avoid harm to the Debtor's estate, and good, adequate and sufficient cause has been shown to justify the granting of the relief requested herein, and the entry of this Final Order.

J.    The adequate protection provided herein and other benefits and privileges contained herein are consistent with and authorized by the Bankruptcy Code and are necessary in order to obtain the consent or non-objection of parties.

K.    The relief sought in the Motion is necessary and in the best interests of the Debtor's estate in order to prevent harm to the Debtor's estate that would otherwise result if the Debtor were prevented from using the DIP Factor's Prepetition Collateral in order to maintain its operations and, preserve and maximize the value of the assets of its estate. Based on the record presented to the Court by the Debtor and the DIP Factor, and on the negotiated consent of the Committee, it appears that the DIP Factor is entitled to adequate protection of its interests in the Prepetition Collateral pursuant to sections 361 and 363(e) of the Bankruptcy Code.

NOW, THEREFORE, IT IS HEREBY ORDERED:

1.    **Granting of Motion.** The Motion is granted in its entirety subject to the provisions hereof. Any objections to the relief sought in the Motion that have not been previously resolved or withdrawn are hereby overruled on their merits. This Final Order shall

become effective immediately upon its entry.

2. **Authorization to Sell Accounts Receivable.** The Debtor is hereby authorized (i) to enter into the DIP Term Sheet on a final and permanent basis, substantially in the form filed with the Court, with such modifications as permitted by this Final Order, and the other Postpetition Factor Documents and (ii) sell Accounts to the DIP Factor pursuant to the terms of the DIP Term Sheet and—after deduction by DIP Factor of amounts allowed under the Postpetition Factor Documents, including, but not limited to, the applicable discount fee, payments of regularly-scheduled principal and interest due under the Prepetition Obligations in accordance with past and customary practice, and such Reserve that Factor may elect to retain— use the corresponding advances thereof in its operations. Notwithstanding the grant of security interests in favor of the DIP Factor as provided in this order and in the Documents, the DIP Factor shall be the absolute owner of any Accounts purchased in accordance with this order or the Documents, free of any claims and interests. The Postpetition Factor Documents may be amended, modified, supplemented or the provisions thereof waived to the extent provided in the Postpetition Factor Documents without further order of this Court to the extent that such amendment, modification or supplement does not materially and adversely affect the Debtor, i.e., it does not (i) increase in the aggregate of amount of the facility thereunder, (ii) increase the discount fees or applicable interest rates charged, other than increases described in the Motion or in the Postpetition Factor Documents as filed with this Court, or (iii) the addition of financial covenants or financial events of default that are on terms materially more onerous or burdensome to the Debtor, provided however, that a copy of any such amendment, modification or supplement shall be filed by the Debtor with the Court and served by the Debtor on the U.S. Trustee and the committee of unsecured creditors appointed in the Case

(the "Committee"). Provided further, the Debtor and/or the DIP Factor may seek approval of material modifications to the Postpetition Factor Documents on shortened notice.

3. **Discretion to Advance; Expiration.** Provided no Event of Default has occurred, the DIP Factor facility shall terminate upon the earlier to occur of the following: (i) November 30, 2011 or (ii) the effective date of a plan of reorganization. Notwithstanding the foregoing and the absence of any Event of Default being declared and only to the extent provided under the Factor Agreement and according to the customary ordinary course of business practice of the DIP Factor and the Debtor, the DIP Factor may decide, in its sole discretion, to accept or reject any Account offered for sale and to decline to advance the purchase price for such Account.

4. **Adequate Protection to DIP Factor.** Subject in all respects to paragraph 14 hereof and, as provided herein, the Carve-Out, the DIP Factor, in its capacity as a prepetition provide of financial accommodations under the Factor Agreement, is hereby provided with the following forms of adequate protection pursuant to sections 361, 363(c), 363(e) and 364(d) of the Bankruptcy Code in the Prepetition Collateral (including Cash Collateral), each of which shall survive payment in full of the DIP Factor Obligations:

(a) **Postpetition Replacement Liens.** As adequate protection and as an inducement to the DIP Factor to permit the Debtor's use of the Prepetition Collateral, including Cash Collateral, the Debtor hereby grants, assigns and pledges to the DIP Factor, postpetition replacement security interests in and liens (the **"Postpetition Replacement Liens"**), on all of the Prepetition Collateral whether acquired before, or after the Petition Date, whether existing or hereafter acquired, created or arising, and all products and proceeds thereof, including all accessions thereto, substitutions and replacements therefor, wherever located,

including accounts receivables. The liens and security interests granted to the DIP Factor as adequate protection under the Interim Order and this Final Order constitute valid, perfected and enforceable liens against the Collateral without further filing or recording of any document or instrument or the taking of any further actions.

(b) **Payment of Fees, Costs and Expenses.** The DIP Factor shall be entitled to withhold from Debtor's advances all reasonable, documented out-of-pocket costs and expenses incurred by the DIP Factor with respect to the Obligations (including, without limitation, the reasonable fees and disbursements of counsel and other professional advisers advising the DIP Factor including Moore & Van Allen, PLLC, the Rosner Law Group, LLC and any other professionals retained by the DIP Factor, including an industry consultant) and in connection with the protection and enforcement of the rights and interests of the DIP Factor, whether such fees, costs, disbursements and expenses were incurred prior to, on or after the Petition Date without the requirement of prior Court approval or compliance with guidelines applicable to retained professionals. The DIP Factor will provide copies of any invoices for postpetition fees and expenses to the U.S. Trustee, counsel to the Debtor, counsel to the Junior DIP Lender, and counsel to the Committee, and the U.S. Trustee and the Committee shall have a period of ten (10) days from the receipt of the invoice to review and object to such invoice.

(c) **Recognition of Prepetition Liens.** Subject to the provisions of paragraph 14 of this Final Order, the Prepetition Liens shall continue to be, in accordance with the Interim Order and this Final Order valid, perfected, binding, and enforceable, shall not be avoidable under the Bankruptcy Code, and shall not be subject to subordination under section 510 of the Bankruptcy Code.

(d) **507(b) Claims.** With respect to Prepetition Obligations under the Factor Agreement and Term Loan, the DIP Factor is granted superpriority claims as provided in section 507(b) of the Bankruptcy Code (the "**Factor 507(b) Claims**"), with priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including without limitation, sections 326, 328, 330, 331 and 726 of the Bankruptcy Code, subject and subordinate only to (i) the Carve-Out, (ii) the Superpriority Claim, and (iii) the "DIP Superpriority Claims" (as defined in the Holdings DIP Order and subject to the proceeds sharing limitations set forth in this Order). Any recovery, proceeds, or distribution on account of the Factor 507(b) Claims or the 507(b) Claims (as defined in the Holdings DIP Order) shall be shared equally (i.e., 50%) between the DIP Factor (on account of the Prepetition Obligations entitled to adequate protection) and the Prepetition Lender until such time that either such claims are paid in full.

(e) Accrual and Payment of Interest. Prior to the occurrence of an Event of Default, the Debtor shall accrue and pay interest on the Pre-petition Obligations at the contractual rate and following an Event of Default the Debtor shall accrue and pay interest at the default contractual rate. All of the foregoing payments shall be made in accordance with the terms of the Factor Agreement and Term Loan and on the dates provided therein.

(f) Allowance of Claims. Subject only to the provisions of paragraph 14, the claims arising from or in connection with the Prepetition Obligations are hereby deemed "allowed claims" within the meaning of section 502 of the Bankruptcy Code and without the need to file a proof of claim in accordance with any bar date order set by the Court.

5. **DIP Superpriority Claim.**

(a)     Except with respect to the Carve-Out, the DIP Factor on account of the Postpetition Obligations is granted a super-priority claim (the **"Superpriority Claim"**) that shall have priority under sections 364(c)(1), 503(b) and 507(b) of the Bankruptcy Code over all expense claims and unsecured claims against the Debtor and the Debtor's estate of any kind or name whatsoever including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726(b), 1113, and 1114 of the Bankruptcy Code.

(b)     <u>Carve-Out.</u>  For purposes of this Order, the definition of the term "**Carve-Out**" shall have the meaning ascribed to it under the Interim Holdings DIP Order, <u>provided,</u> <u>further,</u> that the Carve Out shall not be available to pay any such professional fees and expenses incurred in connection with the initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation against the DIP Factor or its affiliates, successors, assigns, agents, directors, officers, managers, or professionals.

6.     <u>Postpetition Liens.</u>  As security for the Postpetition Obligations, the DIP Factor is granted, by virtue of and pursuant to the Interim Order and this Final Order, valid, binding, enforceable, and perfected postpetition liens (the **"Postpetition Liens"**) in and to the following postpetition assets of the Debtor: (a) Reserves and all payments (if any) due or to become due to the Debtor from the Reserves as well as all monies on deposit, holdbacks and credits related to such; (b) all Accounts and related general intangibles whether existing upon the Petition Date, all interest of replevin held by the Debtor arising in goods, the sale of which gave rise to any Account (other than the "Control Account" under the Holdings DIP Order); (c) all documents, chattel paper, instruments and general intangibles relating to the foregoing; (d) all books and records pertaining to all of the foregoing, including but not limited to computer programs, data

and lists; (e) all inventory of the Debtor; all Equipment (as defined in the Factor Agreement) of the Debtor except and excluding equipment the intended primary purpose of which is to dispense beverages in a food service environment; and (f) all proceeds of the foregoing (collectively, the **"Postpetition Collateral,"** and together with the Prepetition Collateral, the **"Collateral").** For the avoidance of doubt, the Collateral does not include the assets securing the revolving promissory note dated January 6, 2011 issued prepetition by the Junior DIP Lender to the Debtor and amounts in the Control Agreement (as defined in the Junior DIP Lender's DIP Facility) and as incorporated into the Junior DIP Lender's senior liens granted under the Holdings DIP Order. The Postpetition Liens shall be senior and prior in all respects to all other liens or interests (except with respect to liens granted under paragraph 7(a) and (b) of the Holdings DIP Order), and the Postpetition Collateral shall not be subject to any carve-out, including for administrative fees and expenses, with it being the understanding that the Junior DIP Lender will provide any such funding. Notwithstanding any provisions of any agreement, instrument, document, the Uniform Commercial Code, or any other relevant law or regulation of any jurisdiction, no further notice, filing, or other act shall be required to effect such perfection.

7.    **Section 551; No Subordination or *Pari Passu* Liens.** Except as set forth herein with respect to the Carve-Out or in the Holdings DIP Order with respect to the Junior DIP Facility, the Postpetition Liens shall not be (i) subject to any lien that is avoided and preserved for the benefit of the Debtor's estate under section 551 of the Bankruptcy Code, or (ii) except as provided herein, subordinated to or made *pari passu* with any other lien under section 364(d) of the Bankruptcy Code or otherwise. No claim or lien having a priority superior to or *pari passu* with the Postpetition Liens, the Postpetition Replacement Liens, or the Superpriority Claim granted by this Final Order with respect to the Postpetition Obligations,

shall be granted or allowed.

8. **Discount Fees and Interest.** Interest on the Postpetition Obligations shall accrue at the rates (including any applicable default rates) and shall be paid at the times as provided in the Postpetition Factor Documents.

9. **Authorization to Pay Fees.** Any and all fees paid or required to be paid in connection with the DIP Factor Documents (including, but not limited to, the fees and expenses of the DIP Factor, facility fee of $15,000, related prepetition professional fees and expenses) are hereby authorized and shall be paid as set forth in the DIP Term Sheet or contained in the Postpetition Factor Documents filed with the Court.

10. **Events of Default.** The postpetition occurrence of any of the following shall constitute an Event of Default:

    (a) The failure of Debtor to punctually and properly observe, keep or perform any covenant, agreement or condition of the Documents required to be observed, kept or performed in all material respects; or required under any other agreement or contract that may be executed between Debtor and DIP Factor, in each case subject to any applicable grace periods and cure rights (provided that with respect to payments of principal and interest under the Term Loan, the DIP Factor shall only require the Debtor to make regularly-scheduled and customary payments of such principal and interest).

    (b) A representation or warranty made by Debtor in the Documents purporting to represent the financial condition of Debtor is untrue or incorrect in any material respect (without duplication of any materiality qualifier contained therein) as of such date, except to the extent that such representation or warranty expressly relates to an earlier date.

    (c) The failure of Debtor to, within ten (10) business days, deliver to DIP Factor a remittance received by Debtor in payment of a purchased Account.

    (d) The failure of Debtor to pay any Obligation owed by Debtor to DIP Factor any Obligation arising under any of the Documents when due and payable, in each case subject to any applicable grace periods and cure rights.

    (e) A levy or notice of attachment, execution(s), tax lien(s) or assessment(s) or similar process is issued against the Accounts or Debtor or any other Collateral,

but in such case only to the extent such encumbrance primes the DIP Factor's security interest or otherwise adversely affects the rights and remedies of the DIP Factor.

(f)     The dissolution of Debtor.

(g)     Until full payment and performance of all obligations of Debtor under the Documents, Debtor fails to notify in writing to DIP Factor within fifteen (15) days of any changes of name, d/b/a, place of business, state of incorporation or corporate status.

(h)     Debtor's allegation in any pleading or other writing, or the finding or conclusion by the Bankruptcy Court, that any loan or security document of the DIP Factor is not valid, binding or enforceable.

(i)     Filing of a motion to dismiss the Debtor's bankruptcy case or to convert it to one under chapter 7 of the Bankruptcy Code (i) by the Debtor or (ii) by any other party, which motion is not withdrawn or denied within forty-five (45) days of its filing.

(j)     Appointment of a chapter 11 trustee or examiner with enlarged powers relating to the operation of the business of the Debtor.

(k)     Granting of relief from automatic stay to permit foreclosure or replevin of any material assets of Debtor.

(l)     Entry of any order, without the prior written consent of DIP Factor, reversing, amending, supplementing, staying or vacating the Interim Order or the Final Order.

(m)     Other than as set forth in the Debtor's Motion for Entry of an Order Authorizing the Debtor to Honor and Perform Certain Prepetition Obligations to Customers and Continue Customer Programs, the Debtor's Motion for Entry of an Order Authorizing the Debtor to Honor Prepetition Obligations for Certain Critical Vendors, the Debtor's Motion for Authority to Pay Prepetition Wages and related obligations, the payment to the Junior DIP Lender for the dollar-for-dollar roll-up of the Prepetition Loan as provided for in the Junior DIP Lender's postpetition financing facility (or the payment of adequate protection in connection therewith), or the Prepetition Obligations, payment of prepetition debt to any creditor other than pursuant to a confirmed plan of reorganization or as approved by the Bankruptcy Court.

(n)     The occurrence in any ERISA plan, if any, of any unfunded deficiency in excess of $100,000.00.

(o)     The occurrence of any material adverse effect as defined in the Junior DIP Lender's loan documents.

(p)    The submission by the Debtor of any motion or other pleading attacking the validity or enforceability of any of the documents executed in connection with the Debtor's prepetition obligations to DIP Factor, the DIP Facility or the Final Order, or of any order granting DIP Factor adequate protection of its interest in the Collateral.

(q)    Any default under any cash collateral order.

(r)    The filing (with respect to all plans of reorganization filed by the Seller) or confirmation (with respect to all plans filed by any person or entity other than the Seller) of a plan of reorganization which contains a treatment of the postpetition obligations under the DIP Facility in a manner inconsistent with that provided for in the DIP Facility documents, or, which, at a minimum, does not provide for the indefeasible payment in full of the Postpetition Obligations under the DIP Factor Agreement (provided that such obligations shall not include the Prepetition Obligations or treatment of the Term Loan) by a date or time any later than the "effective date" of such plan.

(s)    The entry of an order authorizing the sale of all or substantially all of the assets of the Debtor which does not provide that the proceeds of sale, net of the costs approved by the DIP Factor, if any, of the Collateral are paid to the DIP Factor, in accordance with the priority set forth in the DIP Factor Agreement and subject to the Junior DIP Lender's junior lien on such collateral.

(t)    Any bid/sales procedure, motion, objection or any pleading that opposes or challenges in any way the right of DIP Factor to credit bid pursuant to section § 363(k) of the Bankruptcy Code with respect to the Factor Collateral, except to the extent that such pleading is filed by an entity other than the Debtor, Junior DIP Lender or the Committee.

11.    **Automatic Stay; Remedies**  Upon the occurrence of an Event of Default and following the provision of five (5) business days' written notice to the Debtor, the Committee and the Office of the U.S. Trustee, the DIP Factor shall have relief from the automatic stay and may terminate the DIP Factor Facility, foreclose upon all or any portion of the Collateral, and apply the proceeds thereof to the Obligations, or otherwise exercise remedies against such collateral permitted by non-bankruptcy law.  During such five (5) business day notice period, the Debtor, the Committee and the U.S. Trustee shall be entitled to seek an emergency hearing with the Bankruptcy Court, and the Debtor will have no right to seek the use of Cash Collateral.

Unless the Bankruptcy Court during such period determines that an Event of Default has not occurred, the automatic stay, as to the DIP Factor, shall be automatically terminated at the end of such notice period and without further order of the Court. The Debtor shall cooperate with the DIP Factor to effect an orderly liquidation of the Collateral. The DIP Factor may also resort to any one or more of the following remedies. The employment of any particular remedy shall not prevent the concurrent or subsequent employment of any other appropriate remedy or remedies:

(a)     Declare any indebtedness secured by the DIP Factor Facility immediately due and payable.

(b)     After obtaining relief from the automatic stay, exercise its rights as a secured party and enforce the Postpetition Liens, Postpetition Replacement Liens, or Prepetition Liens pursuant to applicable law, including, but not limited to, the right of DIP Factor to establish contact with and instruct any and all Account Debtors (as defined in the DIP Factor Documents) to remit payment(s) due or to become due arising from the sale of merchandise or rendering of services directly to DIP Factor, whether or not said payments relate to Accounts purchased Pursuant to the DIP Factor Documents or Factor Agreement. DIP Factor shall have the right to establish contact with and instruct any other party from whom Debtor may be entitled to receive monies now due or to become due in the future to remit said monies to DIP Factor.

(c)     Immediately terminate the DIP Factor Facility as to future transactions, without affecting the parties' rights and obligations with respect to prior transactions.

(d)     Subject to applicable law and after obtaining relief from the automatic stay, enter the premises of Debtor and take possession of the Collateral and of records pertaining to the Accounts and the Collateral.

(e)     Grant extensions, compromise claims and settle Accounts for less than face value, all without prior notice to or authority of Debtor, except as granted herein.

(f)     Exercise all other rights conferred by law or equity or under the DIP Factor Documents, Factor Agreement, or Term Loan and resort to any remedy existing at law or in equity for the collection of all Obligations and enforcement of the covenants and agreements contained within the Documents.

12.     **Enforcement; Application of Collateral Proceeds.** Subject to the grant of any

senior liens to the Junior DIP Lender under the Holdings DIP Order, if upon an Event of Default and in compliance with the preceding paragraph, DIP Factor shall at any time exercise any of its respective rights and remedies hereunder, under the Documents, or under applicable law in order to effect payment or satisfaction of the Obligations or to receive any amounts or remittances due hereunder or under the Documents, including without limitation, by foreclosing upon and selling all or a portion of the Collateral, the DIP Factor shall have the right without any further action or approval of this Court to exercise such rights and remedies as to all or such part of the Collateral DIP Factor shall elect in its sole discretion, with the exception that the DIP Factor will be required to marshal its claims against the Collateral in such a way that it forecloses first on those assets over which the Junior DIP Lender is secured by junior liens, including but not limited to the Accounts, before proceeding against any other Collateral.

13. **Dismissal of Case.** If an order dismissing this case under section 1112 of the Bankruptcy Code or otherwise (including under section 707 of the Bankruptcy Code) is at any time entered, such order shall provide (in accordance with sections 105 and 349(b) of the Bankruptcy Code) that (i) the claims and liens granted pursuant to the Interim Order or this Final Order to or for the benefit of the DIP Factor shall continue in full force and effect and shall maintain their priorities as provided in the Interim Order and this Final Order until all Postpetition Obligations in respect thereof shall have been indefeasibly paid in full in cash and satisfied in the manner provided in the Documents (and that such claims and liens shall, notwithstanding such dismissal, remain binding on all parties in interest), (ii) prior to dismissal, the Debtor shall deliver to the DIP Factor and record, at the Debtor's cost, such financing statements, mortgages and other documentation evidencing perfected liens in the Collateral as the DIP Factor shall reasonably request, and (iii) to the extent permitted by applicable law, this

Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing such claims and liens.

14. **Binding Nature of Stipulations and Order.** The stipulations set forth in paragraphs A through K above shall be binding upon the Debtor and any other parties in interest, including without limitation, any Committee, unless (a) a party in interest (other than the Debtor) has filed a complaint pursuant to Bankruptcy Rule 7001 seeking to invalidate, subordinate, or otherwise challenge (collectively, the **"Challenges"**) the Prepetition Obligations or the Prepetition Liens; provided, however, that any such complaint (or motion for leave for standing, with a draft complaint attached) must be filed in this Court within sixty (60) days of when the Committee is furnished with the lien perfection documents and loan documentation by the DIP Factor, or any subsequent date that may be agreed to in writing by the DIP Factor with respect to the time to file any such complaint relating to the Prepetition Obligations and/or the Prepetition Liens. If no such complaint is filed within such time period, then any and all Challenges shall be, without further notice to or order of the Court, deemed to have been forever relinquished, released, and waived as to such Committee and other person or entity, and if such complaint is timely filed on or before such date, any and all claims and defenses against the DIP Factor shall be deemed, immediately and without further action, to have been forever relinquished, released, and waived as to such Committee and other person or entity, except with respect to claims and defenses that are expressly asserted in such complaint, unless such claims in accordance with the Federal Rules of Civil Procedure relate back to the date the complaint was filed. If no such complaint as to the Prepetition Obligations or Prepetition Liens is filed within such time period, or such timely filed complaint does not result in a final and non-appealable order of this Court that is inconsistent

with this paragraph, then, without the requirement or need to file any proof of claim with respect thereto, (i) the Prepetition Obligations in the amount(s) specified in Paragraph D(i) above shall constitute allowed secured claims for all purposes in this and any subsequent cases or proceedings under the Bankruptcy Code, including, without limitation, any chapter 7 proceedings upon conversion (a "Successor Case") and the DIP Factor shall be deemed oversecured for purposes of section 506(b), (ii) the Prepetition Liens shall be deemed legal, valid, binding, enforceable, perfected liens not subject to recharacterization, subordination or avoidance for all purposes in this and any Successor Case, and (iii) the Prepetition Obligations, the Prepetition Liens, and prior payments on account of or with respect to the Prepetition Obligations shall not be subject to any other or further claims, cause of action, recharacterization, objection, contest, setoff, defense, or challenge by any party in interest for any reason, including, without limitation, by any successor to or estate representative of the Debtor.

15. **Right to Credit Bid.** The DIP Factor shall have the right to credit bid the amount of its Prepetition Obligations and/or DIP Factor Facility with respect to any sale of assets or equity under either section 363 of the Bankruptcy Code or a plan of reorganization (including section 1129(b)(2) of the Bankruptcy Code), the amount owing pursuant to the Obligations, which credit bid rights under section 363(k) of the Bankruptcy Code or otherwise shall not be impaired in any manner, and no future order or plan may impair the credit bid rights of the DIP Factor.

16. **Preservation of Rights Granted Under This Order.**

(a) Other than the Carve-Out, and with respect to the Prepetition Liens and Postpetition Liens, and subject to the liens granted to the Junior DIP Lender under the

Holdings DIP Order, no claim or lien having a priority superior to or *pari passu* with those granted by this Order to the DIP Factor shall be granted or allowed while any portion of the Postpetition Obligations remain outstanding, and the Postpetition Replacement Liens and Postpetition Liens shall not be subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise.

(b)     Unless all the Postpetition Obligations shall have been indefeasibly paid in full, the Debtor shall not (i) in any way prime or otherwise adversely affect the liens granted under this Order by offering a subsequent lender or a party in interest a superior or *pari passu* lien or claim pursuant to sections 364(c)(1), 364(d) or section 507(b) of the Bankruptcy Code or otherwise, (ii) in any way grant junior encumbrances on any Collateral, or (iii) otherwise encumber otherwise unencumbered assets or estate property of the Debtor, in each case except as provided in the Holdings DIP Order.

(c)     If any or all of the provisions of the Interim Order or this Final Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacation shall not affect (i) the validity of any of the Obligations incurred or payments made prior to the actual receipt of written notice of the effective date of such reversal, stay, modification or vacation or (ii) the validity or enforceability of any lien or priority authorized or created hereby or pursuant to the DIP Factor Agreement with respect to any of the Postpetition Obligations. Notwithstanding any such reversal, stay, modification or vacation, any use of the Obligations by the Debtor prior to the actual receipt of written notice of the effective date of such reversal, stay, modification or vacation shall be governed in all respects by the original provisions of this Final Order, and the DIP Factor shall be entitled to all the rights, remedies, privileges and benefits

granted by section 364(e) of the Bankruptcy Code, this Final Order and pursuant to the Postpetition Factor Documents with respect to all Obligations.

(d)     Except as expressly provided in this Final Order or in the DIP Factor Documents or as agreed in writing by the Factor, the Postpetition Liens, the Postpetition Replacement Liens, the Superpriority Claim, and all other rights and remedies of the DIP Factor granted by the provisions of this Final Order and the Postpetition Factor Documents as modified by this Final Order shall survive, and shall not be modified, impaired or discharged by (i) the conversion of this case to one under chapter 7 of the Bankruptcy Code, (ii) the dismissal of this case, or (iii) the entry of an order confirming a chapter 11 plan in this case. The terms and provisions of this Final Order and the Postpetition Factor Documents as modified by this Final Order shall continue in this case, or in any superseding chapter 7 case under the Bankruptcy Code, and the Postpetition Liens, the Postpetition Replacement Liens, the Superpriority Claim, and all other rights and remedies of the DIP Factor granted by the provisions of the Interim Order and this Final Order and the Postpetition Factor Documents shall continue in full force and effect until the Postpetition Obligations are indefeasibly paid in full.

17.     **Rights Reserved.**  Notwithstanding anything herein to the contrary, the entry of this Final Order is without prejudice to, and does not constitute a waiver of expressly or implicitly, or otherwise impair (a) any of the rights, claims, privileges, objections or defenses (whether legal, equitable or otherwise) of the DIP Factor under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right of the DIP Factor to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of this case, conversion of this cases to one under chapter 7 of the Bankruptcy Code, or

appointment of a chapter 11 trustee or examiner (including an examiner with expanded powers), or (iii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans or (b) any other rights, claims or privileges (whether legal, equitable or otherwise) of the DIP Factor. Nothing in this Order, however, shall be deemed to modify any of the "Events of Default" as set forth in the Holdings DIP Order.

18. **Prohibitions Against Granting Certain Bankruptcy Claims and Liens and Using Collateral Other than in Accordance with the Postpetition Factor Documents.** Except as expressly provided in the Postpetition Factor Documents, including the Interim Order or this Final Order, and the Holdings DIP Order, the Debtor shall be prohibited at any time during this case from granting claims or liens in the Collateral or any portion thereof to any other parties pursuant to sections 364(d), 503(b) or 507(b) of the Bankruptcy Code or otherwise; provided, however, and notwithstanding anything to the contrary in this Final Order, the statutory imposition of a materialmans', mechanics', artisans' or other lien by operation of law without further action by the Debtor shall not violate anything to the contrary in the Interim or this Final Order. The Debtor shall not at any time use the Collateral except pursuant to the terms and conditions of the Interim and this Final Order and the Postpetition Factor Documents.

19. **Validity, etc. of Postpetition Liens.** The validity, enforceability, priority or amount of any of the claims and liens granted to or for the benefit of the DIP Factor under the Interim Order or this Final Order or any other Postpetition Factor Documents with respect to the Postpetition Obligations shall not be affected by any finding or order of this Court or any other court regarding any Prepetition Liens.

20. **Debtor Authorized and Directed to Execute Documents and Pay Fees.** The Debtor is authorized and directed, and the automatic stay imposed by section 362 of the

Bankruptcy Code is hereby modified to the extent necessary, to (a) do and perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the Postpetition Factor Documents and such additional security agreements, pledge agreements, control agreements, mortgages and financing statements and other documents and instruments as may be necessary or appropriate to better evidence and perfect the DIP Facility), (b) pay all principal, interest, fees and expenses and other amounts described in the DIP Term Sheet as such become due and without the need for further Court approval, including, without limitation, facility fees, administration fees, and the fees and expenses of the attorneys, advisers, and consultants engaged or to be engaged by DIP Factor to the extent provided in the DIP Term Sheet and related Postpetition Factor Documents. None of such fees and expenses shall be subject to the approval of this Court or the United States Trustee Guidelines, and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with this Court.

21. **Postpetition Obligations Not Subject to Setoff, etc.** The Postpetition Obligations and the claims and liens granted to or for the benefit of the DIP Factor pursuant to the Interim Order and this Final Order and the other Postpetition Factor Documents, are not subject to any setoff, reduction or disallowance of any kind, including, without limitation, under section 502(d) of the Bankruptcy Code.

22. **Good Faith Under Section 364(e).** The terms of the Interim Order and this Final Order were negotiated in good faith and at arm's length by and among all of such parties between the Debtor and the DIP Factor. The DIP Factor shall be entitled to the full protections of section 364(e) of the Bankruptcy Code in the event that this Final Order or any provision hereof is vacated, reversed, or modified, on appeal or otherwise. Accordingly, if any or all of

the provisions of this Final Order are hereafter modified, vacated, or stayed, such modification, vacation, or stay shall not affect (a) the validity of any obligation, indebtedness, or liability incurred by the Debtor to the DIP Factor under the Postpetition Factor Documents before the effective date of such modification, vacation, or stay, or (b) the validity or enforceability of any security interest, lien, priority, or other protection authorized or created hereby. Notwithstanding any such modification, vacation, or stay, any indebtedness, obligations, or liabilities incurred by the Debtor to the DIP Factor before the effective date of such modification, vacation, or stay shall be governed in all respects by the original provisions of this Final Order, and the DIP Factor shall be entitled to all the rights, remedies, privileges, and benefits granted herein with respect to all such indebtedness, obligations, or liabilities.

23.     **Order Effective Immediately.**  This Final Order is hereby deemed effective immediately pursuant to Bankruptcy Rule 6004(h).

24.     **Survival.**  The provisions of the Interim Order and this Final Order, including the grant of claims and the Postpetition Liens and the Postpetition Replacement Liens to or for the benefit of DIP Factor, and any action taken pursuant hereto shall survive the entry of any order that may be entered (a) confirming any plan of reorganization in this case, (b) converting this case to one under chapter 7 of the Bankruptcy Code, (c) dismissing this case or a Successor Case, or (d) pursuant to which this Court abstains from hearing any this case or a Successor Case.

25.     **No Third Party Rights.**  Except as explicitly provided for herein, the Interim and this Final Order do not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

26.     **Discharge Waiver.**  The Obligations shall not be discharged by the entry of an

order (a) confirming a chapter 11 plan in this case (and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtor hereby waives such discharge) or (b) converting this case to one under chapter 7 of the Bankruptcy Code. Under no circumstances shall any chapter 11 plan in this case be confirmed or become effective unless such plan provides that the Postpetition Obligations shall be indefeasibly paid in full in cash and satisfied in the manner provided in the Postpetition Factor Documents on or before the effective date of such plan.

27. **Final Order Governs.** In the event that any term or provision of this Final Order conflicts with the terms and provisions of the Interim Order or any term or provision of the other Postpetition Factor Documents, the terms and provisions of this Final Order shall govern.

28. **Binding Effect of Final Order.** Immediately upon execution by this Court, the provisions of this Final Order shall be valid and binding upon and inure to the benefit of the DIP Factor, the Debtor, all other creditors of the Debtor, the Committee, and all other parties in interest and their respective successors and assigns (including any chapter 7 trustee or other trustee or fiduciary hereafter appointed as a legal representative of the Debtor, or with respect to the property of the Debtor's estate in any Successor Case), or upon dismissal of this case or a Successor Case.

29. **No Prejudice.** This Final Order shall not prejudice DIP Factor's rights in connection with any prepetition financing documents, including any third party guarantees.

30. **No Marshalling.** Subject to the provisions of paragraph 12, in no event shall the DIP Factor be subject to the equitable doctrine of marshalling or any similar doctrine with respect to the Postpetition Obligations or any of the property comprising the Collateral.

31. **Limits on the DIP Factor's Liability.** Nothing in the Interim or this Final Order

or in any of the Postpetition Factor Documents or any other documents related to the transactions authorized hereby shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Factor of any liability for any claims arising from the prepetition or postpetition activities by the Debtor in the operation of its business, or in connection with its restructuring efforts. The DIP Factor shall not, in any way or manner, be liable or responsible for (a) the safekeeping of the Collateral, (b) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (c) any diminution in the value thereof, or (d) any act or default of any carrier, servicer, bailee, custodian, forwarding agency or other person, and all risk of loss, damage or destruction of the Collateral shall be borne by the Debtor.

32. **Successors and Assigns.** To the fullest extent permitted by law, the Postpetition Factor Documents as modified by this Final Order and the provisions of this Final Order shall be binding upon the DIP Factor and the Debtor and each of its respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of the Debtor or any examiner appointed pursuant to section 1104 of the Bankruptcy Code in this case or any subsequent chapter 7 case) and the Committee, and shall inure to the benefit of the DIP Factor and the Debtor and (except with respect to any trustee hereinafter appointed or elected for the estate of the Debtor) its respective successors and assigns; provided, however, that the DIP Factor shall have no obligation to enter into any transaction with a chapter 7 trustee or similar responsible person appointed for the estate of the Debtor.

33. **Subsequent Liens.** If the Court grants liens or security interests to others pursuant to Section 364(d) of the Bankruptcy Code or any other provision of the Bankruptcy Code in the Collateral (collectively, the "Subsequent Liens"), any proceeds of the loans or extensions of credit secured by Subsequent Liens shall be applied first to payment of the

Postpetition Obligations, other than with respect to the proceeds of the Junior DIP Facility.

34. **Retention of Jurisdiction.** The Bankruptcy Court shall retain jurisdiction to hear and determine all matters arising from this Final Order and its implementation.

35. **Authority.** The Debtor is authorized to perform all acts, and execute and comply with the terms of such other documents, instruments and agreements the DIP Factor may reasonably require, as evidence of and for the protection of the DIP Factor Facility, or which otherwise may be deemed reasonably necessary by the DIP Factor to effectuate the terms and conditions of this Order and the Postpetition Factor Documents.

Dated: Feb. 11 , 2011

The Honorable Brendan L. Shannon
United States Bankruptcy Judge