# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| JAVO BEVERAGE COMPANY, INC., | Case No. 11-10212 (BLS) |
| Debtor.[1] | |
|  | Re: D.I. 10, 34 |

## FINAL ORDER (I) AUTHORIZING AND APPROVING DEBTOR IN POSSESSION FINANCING PURSUANT TO SECTION 364 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 4001 AND (II) MODIFYING THE AUTOMATIC STAY UNDER SECTION 362 OF THE BANKRUPTCY CODE

Upon the motion (the "Motion")[2] of Javo Beverage Company, Inc., a Delaware corporation, a debtor and debtor in possession (the "Borrower" or the "Debtor") in the above-captioned case (the "Case") commenced on January 24, 2011 (the "Petition Date") for a final order (this "Final Order") under sections 105, 361, 362, 363, and 364 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "Bankruptcy Code"), and Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"), seeking among other things:

    (I)     continued authorization for the Debtor to perform under a first priority senior secured revolving credit facility (the "DIP Facility") with Coffee

---

[1]   The last four digits of the Debtor's federal tax identification number are 4292. The Debtor's mailing address and corporate headquarters is 1311 Specialty Drive, Vista, California 92081.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in that certain Senior Secured Super-Priority Debtor-in-Possession Revolving Promissory Note (the "DIP Credit Agreement") and the Interim Order. The DIP Credit Agreement and the DIP Term Sheet are attached as Exhibit A to the Interim Order [Docket No. 34], and the Budget (as modified herein) is attached as Exhibit 1 to this Final Order. Each such documents are incorporated herein by reference.

Holdings LLC (in such capacity, the "DIP Lender") in an aggregate principal amount of $3,300,000 (the "DIP Commitment" and each individual loan thereunder, a "DIP Loan" and, collectively, the "DIP Loans"), of which $500,000 plus interest and any and all other amounts due on the Prepetition Loan (defined below) shall be reserved for and applied to a dollar-for-dollar Roll-Up (as defined below) of that certain secured revolving promissory note, dated January 6, 2011, issued prepetition to Coffee Holdings LLC (in such capacity, the "Prepetition Lender") by the Borrower (the "Prepetition Loan");

(II)    continued authorization for the Debtor to execute and deliver final documentation consistent with the DIP Credit Agreement and the DIP Term Sheet and to perform such other and further acts as may be necessary or appropriate in connection therewith, which final documents shall include without limitation (a) the DIP Credit Agreement among the Borrower and the DIP Lender and (b) other agreements, documents and instruments delivered or executed in connection with the DIP Term Sheet and the DIP Credit Agreement, all of which shall be in form and substance acceptable to the DIP Lender (such documentation, the "DIP Documents");

(III)    authorization for the Debtor to (a) use the Cash Collateral (as defined below) pursuant to section 363 of the Bankruptcy Code, and all other Prepetition Loan Collateral (as defined below) and (b) provide adequate protection to the Prepetition Lender in the event of a reversal, modification, or vacatur of the Roll Up;

(IV)    authorization to grant, subject to the Carve Out and the terms of this Final Order, to the DIP Lender on account of the DIP Loan (i) postpetition first priority liens on unencumbered assets of the Debtor, (ii) senior liens on collateral securing the Prepetition Loan (after giving effect to the discharge of the Prepetition Loan under the Roll Up, as defined below); (iii) junior liens on collateral securing other validly perfected prepetition indebtedness, and (iv) superpriority administrative expense claims;

(V)    authorization for the DIP Lender to exercise remedies upon the occurrence and continuance of an Event of Default (as defined below) after written notice, including without limitation, upon the entry of an order or orders granting relief from the automatic stay applicable under section 362 of the Bankruptcy Code in respect of the Debtor's assets upon which the DIP Lender has a senior lien under the terms hereof; and

(VI)    to schedule, pursuant to Bankruptcy Rule 4001, a final hearing (the "Final Hearing") for this Court to consider entry of the Final Order authorizing the Borrower, on a final basis, to borrow under the DIP Credit Agreement the balance of the DIP Loans and authorizing and approving, on a final basis, the relief requested in the Motion.

The Interim Hearing having been held by this Court on January 25, 2011; and the Court having entered the Interim Order on January 25, 2011 based upon the record made by the Debtor at the Interim Hearing; and the Debtor having served due and appropriate notice of the Motion [Docket No. 45]; and the Final Hearing being held on February 11,

2011, and after due deliberation and consideration and sufficient cause appearing therefor;

IT IS FOUND, DETERMINED, ORDERED, AND ADJUDGED, that:

1.      *Jurisdiction*.  This Court has jurisdiction over the Case, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      *Notice*.  Notice of the Motion, the relief requested therein and the Final Hearing was served by the Debtor on its twenty five largest unsecured creditors, Accord Financial, Inc., the DIP Lender, counsel to the Committee, the Debtor's landlords, and the United States Trustee for the District of Delaware (the "U.S. Trustee").  Under the circumstances, the notice given by the Debtor of the Motion, the relief requested therein, and the Final Hearing constitutes due and sufficient notice thereof and complies with Bankruptcy Rules 4001(b) and (c).

3.      *Debtor's Stipulations*.  Without prejudice to the rights of any other party (but subject to the limitations thereon contained in paragraph 23 below) the Debtor admits, stipulates, and agrees that:

(a)      as of the Petition Date, the Debtor was truly and justly indebted to Holdings, without defense, counterclaim or offset of any kind, in the aggregate amount of not less than (i) $500,000 in principal amount of the Prepetition Loan made by the Prepetition Lender, plus any interest, fees, and expenses (including fees and expenses of attorneys and advisors) as provided in Prepetition Loan documents (collectively, the "Prepetition Loan Obligations"); (ii) $12,000,000 in principal amount in respect of Holdings 10% Notes beneficially owned by it plus any interest, fees, and expenses (including any fees and expenses of

attorneys and advisors payable thereunder) in accordance with the terms thereof; and (iii) $5,200,000 in principal amount in respect of the Holdings PIK Note, ranking senior in priority to the 10% Notes, beneficially owned by it plus any interest, fees, and expenses (including any fees and expenses of attorneys and advisors payable thereunder) in accordance with the terms thereof (such obligations in clauses (ii) and (iii) hereof being collectively referred to herein as the "Notes Obligations");

        (b)      the liens and security interests granted by the Debtor to the Prepetition Lender to secure the Prepetition Loan Obligations are (i) as of the Petition Date, valid, binding, perfected, enforceable, first priority liens on and security interests in certain property of the Debtor as set forth in and in accordance with the Prepetition Loan documents (the "Prepetition Loan Collateral"), (ii) not subject to avoidance, recharacterization, recovery, or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law, and (iii) effective as of the date of entry of the Interim Order, subject and subordinate only to, after giving effect to the Interim Order, the DIP Liens and the Carve Out (as defined below);

        (c)      (i) no portion of, amount due under, or amount paid on account of or in connection with the Prepetition Loan Obligations or the Notes Obligations is subject to avoidance, recharacterization, recovery, or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law and (ii) the Debtor does not have, and hereby forever releases, any and all claims, counterclaims, causes of action, defenses or setoff rights, whether arising under the Bankruptcy Code or applicable nonbankruptcy law, against Holdings and its affiliates, subsidiaries, agents, members, partners, investors, officers, directors, employees, attorneys and advisors.

4. Findings Regarding the DIP Loans.

(a) The Debtor has an immediate need to obtain the DIP Loans and to use Prepetition Loan Collateral (including Cash Collateral) in order to, among other things, permit the orderly continuation of its business, make payroll, and satisfy other working capital and general corporate purposes of the Debtor. The Debtor's incurrence of the DIP Loans is, therefore, necessary to ensure that the Debtor has sufficient working capital and liquidity to preserve and maintain the going concern value of the Debtor's estate and to avoid irreparable harm to the Debtor's estate and creditors.

(b) The Debtor is unable to obtain financing from sources other than the DIP Lender pursuant to, and for the purposes set forth in, the DIP Documents and is unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. The Debtor is also unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2), 364(c)(3), and 364(d)(1) of the Bankruptcy Code without granting the DIP Liens, the DIP Superpriority Claims, and the Roll Up (as defined below), in each case on the terms and conditions set forth in this Order and the DIP Documents. The Roll Up of Prepetition Loan Obligations into the DIP Obligations is fair and a necessary inducement for the DIP Lender to extend postpetition financing.

(c) The terms of the DIP Loans pursuant to this Order are fair and reasonable, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties and constitute reasonably equivalent value and fair consideration.

(d) The DIP Documents have been the subject of extensive negotiations conducted in good faith and at arm's length among the Borrower and the DIP Lender, and (x) all

6

of the Debtor's obligations and indebtedness arising under or in connection with the postpetition

DIP Loans, including without limitation, (i) all loans made to the Borrower as contemplated and

authorized by this Order and (ii) all other obligations of the Debtor under the DIP Documents

and this Order paid to the DIP Lender, including, without limitation, any fees provided for in the

DIP Documents and (y) all of the Debtor's obligations and indebtedness arising under or in

connection with the Prepetition Loan (the obligations in clauses (x) and (y) being collectively

defined herein as the "DIP Obligations"), shall be deemed to have been extended by the DIP

Lender in "good faith" as such term is used in section 364(e) of the Bankruptcy Code, and in

express reliance upon the protections set forth therein, and shall be entitled to the full protection

of section 364(e) of the Bankruptcy Code in the event that this Order or any provision hereof is

vacated, reversed, or modified on appeal or otherwise.

(e)     The Debtor has requested immediate entry of this Order pursuant to

Bankruptcy Rules 4001(b)(2) and 4001(c)(2).  Absent granting the relief set forth in this Order,

the Debtor's estate will be immediately and irreparably harmed.  Consummation of the DIP

Loans in accordance with this Order and the DIP Documents are, therefore, in the best interest of

the Debtor's estate.  Good cause has been shown for the entry of this Order, and the DIP Lender

is a good faith lender.

5.     Authorization of the DIP Loans and the DIP Documents.

(a)     The Debtor is hereby granted continued authorization and direction to

enter into and perform under the DIP Documents, including the DIP Term Sheet, the DIP Credit

Agreement, and the deposit account control agreement with Wells Fargo Bank, N.A., and such

documents are hereby approved and incorporated herein by reference. The Budget, as modified and attached hereto, is approved.

(b)      The Borrower is hereby authorized (x) to borrow up to an aggregate principal amount of the balance of the DIP Loans for working capital and other general corporate purposes of the Debtor, including without limitation, to pay interest, fees and expenses in connection with the DIP Loans, in accordance with the Budget, and (y) to roll up the Prepetition Loan Obligations into postpetition DIP Obligations, in accordance with the terms of the DIP Documents without the need for approval of this Court, provided that the Debtor's use of proceeds from the DIP Loan shall only be in accordance with the Budget and the permitted variances set forth herein and the DIP Documents.

(c)      Without limiting the foregoing, the Borrower is authorized and directed to obtain an Advance under the DIP Loans to pay down and discharge the Prepetition Loan Obligations. Subject to the limitations set forth in paragraph 23 below, such Advance shall be deemed to be a DIP Loan, secured by the DIP Collateral and have the priority of a DIP Superpriority Claim. The transactions referred to in this clause (c) are referred to herein as the "Roll Up."

(d)      In furtherance of the foregoing and without further approval of this Court, the Debtor is authorized and directed to perform all acts and to execute and deliver all instruments and documents that the DIP Lender determines to be required or necessary for the Debtor's performance of their obligations under the DIP Documents, including without limitation:

(i)     the execution, delivery and performance of the DIP Documents, including the DIP Credit Agreement;

(ii)    the execution, delivery and performance of one or more amendments, waivers, consents or other modifications to and under the DIP Documents, in each case in such form as the Debtor and the DIP Lender may agree, and no further approval of this Court shall be required for amendments, waivers, consents or other modifications to and under the DIP Documents (and any fees paid in connection therewith) that do not materially and adversely affect the Debtor or which do not (A) shorten the maturity of the DIP Loans, (B) increase the DIP Commitments or the rate of interest payable on the DIP Loans under the DIP Credit Agreement, or (C) modify any Event of Default to be materially more restrictive; provided, however, that a copy of any such amendment, waiver, consent or other modification shall be filed by the Debtor with this Court and served by the Debtor on the U.S. Trustee and any statutory committee of unsecured creditors appointed in the Case (the "Committee");

(iii)   the non-refundable payment to the DIP Lender of the Commitment Fee as set forth in the DIP Credit Agreement; and

(iv)    the performance of all other acts required under or in connection with the DIP Documents.

(e)     The DIP Documents constitute valid and binding obligations of the Debtor, enforceable against the Debtor in accordance with the terms of this Order and the DIP Documents.  No obligation, payment, transfer or grant of liens on and security by the Debtor under the DIP Documents or this Order shall be stayed, voidable, avoidable or recoverable under the Bankruptcy Code or under any applicable nonbankruptcy law (including, without limitation,

9

under sections 502(d) or 548 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or subject to any defense, reduction, setoff, recoupment or counterclaim.

6.     Superpriority Claims.

(a)     Except to the extent expressly set forth in this Order in respect of the Carve Out, pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations (including the postpetition obligations under the DIP Loan with respect to the Roll Up) shall constitute allowed senior administrative claims (the "DIP Superpriority Claims") against the Debtor with priority over any and all administrative expenses, adequate protection claims, and all other claims against the Debtor, now existing or hereafter arising, of any kind whatsoever including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 507(a), 507(b), 726, 1113, or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment; provided, however, that any recovery, proceeds, or distribution on account of the DIP Superpriority Claims or the "Superpriority Claim" (as such term is defined in the Final Order (I) Authorizing the Debtor to Sell Accounts Receivable Under a Postpetition Accounts Receivable Factor Program with Accord Financial, Inc.; (II) Granting Liens and Providing Super-Priority Administrative Expense Status; (III) Granting Adequate Protection; and (IV) Scheduling a Final Hearing (the "Final Accord DIP Order")) shall be shared equally (i.e., 50%) (except with respect to any proceeds of Avoidance Actions, which proceeds shall be distributed solely to the DIP Lender in accordance with

10

paragraph 13 below) between the DIP Lender and Accord Financial, Inc. ("Accord") until such time that either such claims are paid in full, subject to the Carve Out.

(b)     For purposes hereof, the "Carve Out" shall mean (i) allowed, accrued, but unpaid professional fees and expenses of the Borrower and professionals for any Committee as set forth in the Budget (on a cumulative basis) incurred prior to an Event of Default ("Pre-EOD Fees") not otherwise cured or waived by the DIP Lender; provided, however, to the extent that Pre-EOD Fees exceed the amounts provided in the Budget for either of the Borrower's or the Committee's professionals (such professional, an "Underfunded Professional"), the Underfunded Professional may be paid, with the consent of the Borrower's and the Committee's professionals or by Order of the Court, any unused amount set forth in the Budget for payment of the other professionals for the period prior to an Event of Default, (ii) allowed, accrued, but unpaid professional fees and expenses of (x) the Debtor incurred in the Case after an Event of Default (that is not waived or cured) not to exceed an amount equal to $80,000, and (y) the Committee incurred in the Case after an Event of Default (that is not waived or cured) not to exceed an amount equal to $45,000, (iii) the payment of fees pursuant to 28 U.S.C. § 1930; and (iv) payment of other accrued and unpaid postpetition obligations owed by the Debtor and incurred in accordance with the Budget prior to the occurrence of an Event of Default and allowable under section 503(b)(1)(A) of the Bankruptcy Code; provided, further,  (A) except as provided in paragraph 24 of this Final Order, the Carve Out shall not be available to pay any such professional fees and expenses incurred in connection with the initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation against the Prepetition Lender or its affiliates, successors, assigns, agents, directors, officers, managers, or professionals; (B)

11

nothing in this Order shall impair the right of any party to object to the reasonableness of any such fees or expenses to be paid by the Debtor's estate; and (C) that Carve Out granted pursuant to this Order shall not be duplicative of the "Carve-Out" as defined in and granted under the Final Accord DIP Order.

7.     *DIP Liens.*  As security for the DIP Obligations (including the postpetition obligations under the DIP Loan with respect to the Roll Up), effective and perfected upon the date of the Interim Order and without the necessity of the execution by the Debtor (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or the possession or control by the DIP Lender of any property, the following security interests and liens are hereby granted to the DIP Lender (all property identified in clauses (a), (b) and (c) below being collectively referred to as the "DIP Collateral"), in each case subject only to the Carve Out (all such liens and security interests granted to the DIP Lender on account of the DIP Obligations pursuant to this Order, the "DIP Liens"):

(a)     Senior Liens On Unencumbered Property.  Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected senior lien on, and security interest in, (i) all cash or cash proceeds maintained in the Control Account (it being further understood that Accord shall not have a lien on or claim to the Control Account); and (ii) all tangible and intangible prepetition and postpetition property of the Debtor, whether existing on or as of the Petition Date or thereafter acquired, that is not subject to a valid, perfected, non-avoidable and enforceable lien in existence on or as of the Petition Date (collectively, the "Unencumbered Property"), including without limitation, any and all unencumbered cash,

12

inventory, equipment, general intangibles, intercompany notes, insurance policies, contracts, securities, chattel paper, owned real estate, real property leaseholds, fixtures, machinery, deposit accounts, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property and the proceeds of all of the foregoing.

(b)    Senior Liens On Prepetition Loan Collateral.  Pursuant to section 364(d)(1) of the Bankruptcy Code, upon consummation of the Roll Up, a valid, binding, continuing, enforceable, fully-perfected, senior lien on, and security interest in, all Prepetition Loan Collateral.  The DIP Liens on the Prepetition Loan Collateral shall be senior in all respects to the security interests in, and liens on, the Prepetition Loan Collateral.

(c)    Liens Junior To Certain Existing Liens.  Pursuant to section 364(c)(3) of the Bankruptcy Code, a valid, binding, continuing, enforceable, a fully-perfected junior lien on, and security interest in, all tangible and intangible prepetition and postpetition property of the Debtor (including, without limitation, receivables and accounts not purchased by Accord), whether now existing or hereafter acquired, that is subject to valid, perfected and unavoidable liens in existence immediately prior to the Petition Date or to valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code (collectively, "Encumbered Property"), which security interests and liens in favor of the DIP Lenders shall be junior to such valid, perfected and unavoidable liens on the Encumbered Property.

(d)    Liens Senior To Certain Other Liens.  Except as provided herein, the DIP Liens shall not be (i) subject or subordinate to (A) any lien or security interest that is avoided and preserved for the benefit of the Debtor and its estate under section 551 of the Bankruptcy Code

or (B) any liens arising after the Petition Date or (ii) subordinated to or made *pari passu* with any other lien or security interest under sections 363 or 364 of the Bankruptcy Code or otherwise.

8.      *Fees and Expenses.*  Subject to the Budget, the Borrower shall pay to the DIP Lender all reasonable fees and expenses incurred in connection with the restructuring of the Debtor, including without limitation the postpetition and prepetition documented fees, expenses, and disbursements of the DIP Lender and its advisors (including Dechert LLP and the DIP Lender's local Delaware counsel).  None of the fees and expenses payable pursuant to this paragraph shall be subject to Court approval, and no recipient of any such payment shall be required to file any monthly, interim, or final fee application with respect thereto.  The Borrower shall provide copies of any such invoices on account of postpetition fees and expenses to the United States Trustee and any Committee, and the United States Trustee and any Committee shall have ten (10) days from the receipt of such invoices to review and to object to such invoices.  Following the expiration of the 10-day review period, the Borrower shall pay the fees and expenses of the DIP Lender.

9.      *Events of Default.*  Each of the following shall constitute events of default ("Events of Default") hereunder:  (i) any representation or warranty made in the DIP Credit Agreement by the Borrower shall prove to have been false or misleading in any material respect when so made; (ii) the Borrower's failure to pay the principal amount of the DIP Loans on the Maturity Date or a date fixed for prepayment thereof or by acceleration thereof or otherwise; (iii) the Borrower's failure to pay any interest on the DIP Loans or any other amount due and payable pursuant to the DIP Loans; (iv) the Borrower's failure to perform or observe, as the case may be, the Affirmative Covenants and Negative Covenants provided for in the DIP Credit Agreement

14

including, without limitation, such covenants with respect to the Budget (and it being understood that for purpose of complying with the Budget with respect to professionals, the incurrence of professional fees shall be tested on a rolling 30 day basis as provided in paragraph 31 below); (v) one or more judgments or orders as to any obligation arising after the Petition Date in excess of $25,000 (to the extent not covered by independent third-party insurance) or that, individually or in the aggregate, could reasonably be expected to result in a Material Adverse Effect shall be rendered against the Borrower and shall remain undischarged for a period of 30 consecutive days during which execution shall not be effectively stayed by reason of appeal or otherwise, or any action shall be legally taken by a judgment creditor to levy upon assets or properties of the Borrower to enforce any such judgment; (vi) there shall have occurred a Change of Control; (vii) the appointment of an examiner with expanded powers or a trustee in the Case, conversion of the Case to a case or cases under chapter 7 of the Bankruptcy Code or dismissal of the Case by order of the Bankruptcy Court; (viii) the Court shall enter an order granting relief from the automatic stay applicable under section 362 of the Bankruptcy Code to a holder of any security interest to permit foreclosure (including by means of foreclosure under Article 9 of the Uniform Commercial Code and/or applicable state law) on any of the assets of the Borrower; (ix) any order of the Court shall be entered staying, reversing or vacating any of the Order or DIP Documents; (x) the termination or material breach of the Plan Commitment Letter Agreement, dated as of January 23, 2011 between the Borrower and the DIP Lender, or the Restructuring Term Sheet; (xi) an event of default occurs under the postpetition financing provided to the Debtor by Accord, or Accord ceases to provide such postpetition financing under the Accord

DIP Order; and (xiii) the entry of an order by the Bankruptcy Court authorizing the sale of all or substantially all of the assets of the Borrower to which the DIP Lender does not consent.

10. Without limitation to the foregoing, Events of Default shall also include (i) the failure of the Debtor to achieve any of the following Milestones (as defined below), unless otherwise agreed to by the DIP Lender and the Debtor: (A) no later February 7, 2011 (the "Plan Filing Date"), to file a prearranged plan of reorganization (the "Plan") and disclosure statement (the "Disclosure Statement") with the Court containing terms and conditions consistent with the DIP Term Sheet and the Restructuring Term Sheet and otherwise reasonably acceptable to the DIP Lender; (B) to obtain the Final Order approving the DIP Facility within 35 calendar days following the Petition Date; (C) to obtain an order of the Court approving the settlement agreement between the Company and Javo Dispenser, Inc., dated as of January 14, 2011 within 45 calendar days following the Petition Date; (D) to obtain entry of an order of this Court approving the Disclosure Statement within 45 calendar days following the Plan Filing Date; (E) to obtain entry of an order of this Court confirming the Plan (the "Confirmation Order") within 90 calendar days following the Plan Filing Date; and (F) to cause the "Effective Date" of the Plan to occur no later than 15 days after the entry of the Confirmation Order (each of the actions or events set forth in subsections (A) through (F), a "Milestone," and collectively, the "Milestones"); and (ii) the Debtor seeking to implement any transaction or series of transactions that would effect a restructuring on substantially different terms from those set forth in this Order and the Restructuring Term Sheet unless otherwise agreed by the DIP Lender.

11. *Remedies After Event of Default.* The automatic stay under section 362 of the Bankruptcy Code is vacated and modified to the extent necessary to permit the DIP Lender to

exercise, five (5) business days following written notice to the Debtor, any Committee, and the United States Trustee after the occurrence of any Event of Default (the five business days following written notice of such Event of Default, provided such Event of Default has not been cured or waived during such three business day period, the "Termination Date"), all rights and remedies provided for in this Order, the DIP Documents, or at law or equity.

12. Upon the Termination Date, (i) the DIP Lender may terminate the DIP Commitment and declare the DIP Loans then outstanding to be due and payable, together with accrued interest thereon and any unpaid accrued fees and expenses incurred by Holdings or its advisors and counsel, and all other obligations of the Borrower hereunder shall become forthwith due and payable, without presentment, demand or any other notice of any kind, all of which are hereby expressly waived by the Borrower, (ii) Holdings shall have the right to take all or any actions and exercise any remedies available to a secured party under the DIP Loans or applicable law or in equity, and (iii) for the avoidance of doubt, the automatic stay provided in section 362 of the Bankruptcy Code shall be deemed automatically vacated and Holdings shall have the right to exercise any of the remedies under the DIP Loans, including any rights and remedies provided in this Order and the right to realize on all of the Collateral without relief or order of this Court except as provided herein.

13. The actions described in the paragraph above may be taken without further order of, or application to, the Court as the DIP Lender shall elect, subject to the any senior liens and rights granted to Accord under the Final Accord DIP Order. Subject to the rights of any holders of valid, pre-existing, perfected, and non-avoidable first priority liens, the payments or proceeds of the DIP Collateral shall be applied in accordance with the provisions of this Final Order and

the DIP Documents, and in no event shall the DIP Lender be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Obligations, the DIP Collateral, or the DIP Loans; provided, however, that the DIP Lender shall first seek to recover against the DIP Collateral prior to seeking a recovery from proceeds of Avoidance Actions on account of its DIP Superpriority Claim. Notwithstanding the occurrence of the Termination Date or anything herein, all of the rights, remedies, benefits and protections provided to the DIP Lender under this Order shall survive the Termination Date. In any hearing regarding any exercise of rights or remedies, the only issue that may be raised by any party in opposition thereto shall be whether, in fact, an Event of Default has occurred and is continuing. Any delay or failure to exercise rights and remedies under the DIP Documents or this Order shall not constitute a waiver of the DIP Lender's rights hereunder, thereunder, or otherwise, unless any such waiver is pursuant to a written instrument executed in accordance with the terms of the DIP Credit Agreement.

14. *Discharge of Adequate Protection Obligations; Reinstatement.* Upon consummation of the Roll Up, the adequate protection granted to the Prepetition Lender on account of the Adequate Protection Obligations (including the Adequate Protection Liens, 507(b) Claims, and accrual of interest on the Prepetition Loan) shall terminate and deemed to be discharged; provided, however, in the event the Roll Up is reversed, modified, or vacated, but the liens securing the Prepetition Loan Obligations are not avoided, subordinated, recovered, or recharacterized, then (i) the Adequate Protection Obligations (and the adequate protection granted thereon) and all other rights and privileges granted to and for the benefit of the Prepetition Lender in the Interim Order; and (ii) the priming DIP Liens on the Prepetition

Collateral for the benefit of the DIP Lender, shall be automatically and retroactively reinstated without need for further application to this Court, in each case as set forth in the Interim Order. In the event that the liens securing the Prepetition Loan Obligations are avoided, subordinated, recovered, or recharacterized in a Claim and Defense (as defined below) brought by the Committee, or other party in interest for whom that Court has granted standing by a final order, in accordance with the express terms and limitations of this Final Order, the balance of the DIP Obligations shall be reduced on a dollar for dollar basis for the amount of Prepetition Loan Obligations that are so avoided, subordinated, recovered, or recharacterized.

15. *Reservation of Rights.* Nothing herein shall impair or modify any rights, claims, or defenses available in law or equity to the Prepetition Lender.

16. *Limitation On Charging Expenses Against Collateral.* Except to the extent of the Carve Out, no expenses of administration of the Case or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code (including under chapter 7), shall be charged against or recovered from the DIP Collateral or the Prepetition Loan Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the DIP Lender, and no such consent shall be implied from any action or inaction, taken or not taken, by the DIP Lender.

17. *Payments Free and Clear and Section 552.* Any and all payments or proceeds remitted to the DIP Lender pursuant to the provisions of this Final Order or any subsequent order of this Court shall be received free and clear of any claim, charge, assessment or other liability. In addition, in light of the subordination of its DIP Liens and superpriority claims to the Carve

Out, the DIP Lender is entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception shall not apply.

18.     *Cash Collateral.*  To the extent any of the Debtor's cash, including without limitation any cash and other amounts on deposit or maintained by the Debtor in any account or accounts with Holdings, constitutes cash proceeds of the Prepetition Loan, or any other proceeds of the disposition of any Prepetition Loan Collateral, such cash and amounts constitutes proceeds of the Prepetition Loan Collateral and, therefore, is cash collateral of Holdings within the meaning of section 363(a) of the Bankruptcy Code (the "<u>Cash Collateral</u>").

19.     *Use Of Prepetition Loan Collateral (including Cash Collateral).*  The Debtor is hereby authorized to use the Prepetition Loan Collateral, including the Cash Collateral, during the period from the Petition Date through and including the Termination Date for working capital and general corporate purposes in accordance with the terms and conditions of this Order and the Budget, <u>provided</u> that, (a) the Prepetition Loan Obligations are discharged pursuant to the Roll Up and (b) except on the terms of this Order, the Debtor shall be enjoined and prohibited from using the Cash Collateral at any time.

20.     *Information.*  In addition to any reporting requirements under the Prepetition Loan or the DIP Credit Agreement, the Debtor shall promptly provide to the DIP Lender any written financial information or periodic reporting that the DIP Lender may request in its sole discretion.

21.     *Automatic Perfection Of DIP Liens.*

(a)     The DIP Lender is authorized, but not required, to file or record financing statements, intellectual property filings, notices of lien or similar instruments in any jurisdiction, take possession of or control over, or take any other action in order to validate and perfect the

DIP Liens granted to it hereunder. Whether the DIP Lender shall in its sole discretion choose to file such financing statements, intellectual property filings, mortgages, notices of lien or similar instruments, take possession of or control over, or otherwise confirm perfection of the DIP Liens, such DIP Liens shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination as of the date of entry of this Order.

(b)     A certified copy of this Order may, in the discretion of the DIP Lender, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, notices of lien or similar instruments, and all filing offices are hereby authorized and directed to accept such certified copy of this Order for filing and recording.

(c)     The Debtor shall execute and deliver to the DIP Lender all such agreements, financing statements, instruments, and other documents as the DIP Lender may request to evidence, confirm, validate, or perfect the DIP Liens.

(d)     Any provision of any lease or other license, contract or other agreement that requires (i) the consent or approval of one or more landlords or other parties or (ii) the payment of any fees or obligations to any governmental entity, in order for the Debtor to pledge, grant, sell, assign, or otherwise transfer any such leasehold interest or license, or the proceeds thereof, or other DIP Collateral related thereto, is hereby deemed to be inconsistent with the applicable provisions of the Bankruptcy Code. Any such provision shall have no force and effect with respect to the granting of the DIP Liens on such leasehold interest or license or the proceeds of any assignment and/or sale thereof by the Debtor in favor of the DIP Lender in accordance with the terms of the DIP Documents or this Order.

(e)     Notwithstanding anything contained herein to the contrary and without limiting any other rights or remedies of the DIP Lender, contained in this Interim Order or the DIP Documents, or otherwise available at law or in equity, and subject to the terms of the DIP Credit Agreement and applicable law, upon written notice to the landlord of any leased premises that an Event of Default has occurred and is continuing under the DIP Credit Agreement, the DIP Lender may, subject to any separate agreement by and between such landlord and the DIP Lender, enter upon any leased premises of the Debtor for the purpose of exercising any remedy with respect to DIP Collateral located thereon and shall be entitled to all of the Debtor's rights and privileges as lessee under such lease without interference from the landlords thereunder. Nothing herein shall require the DIP Lender to assume any lease as a condition to the rights afforded to the DIP Lender in this paragraph.  Furthermore, other than the Permitted Liens, any landlord's lien, bailee's rights, security interest or other interest that any landlord, warehousemen, bailee or landlord's mortgagee may have in any DIP Collateral of the Debtor located on such leased premises, to the extent the same is not void under section 545 of the Bankruptcy Code, is hereby expressly subordinated to the DIP Liens in such collateral.

22.     *Preservation Of Rights Granted Under This Order.*

(a)     Other than valid, perfected, and non-avoidable liens existing on the Petition Date, no claim or lien having a priority senior to or *pari passu* with those granted by this Order to the DIP Lender shall be granted or allowed while any portion of the DIP Obligations (or any refinancing thereof) remain outstanding, and the DIP Liens shall not be subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtor's estate

under section 551 of the Bankruptcy Code or subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise.

(b)     Unless all DIP Obligations shall have been indefeasibly paid in full in cash, the Debtor shall not seek, and it shall constitute an Event of Default hereunder and under the DIP Documents and a termination of the right to use the Cash Collateral if the Debtor seeks, or if there is entered, (i) any modification of this Order without the prior written consent of the DIP Lender, and no such consent shall be implied by any other action, inaction, or acquiescence by the DIP Lender; or (ii) an order converting or dismissing the Case. If an order dismissing the Case under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (A) the DIP Superpriority Claims, the other administrative claims granted pursuant to this Order (subject to the Carve Out), and the DIP Liens shall continue in full force and effect and shall maintain their priorities as provided in this Order until all DIP Obligations shall have been paid and satisfied in full (and that such claims and liens granted pursuant to this Order shall, notwithstanding such dismissal, remain binding on all parties in interest); and (B) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in clause (A) above.

(c)     If any or all of the provisions of this Order are hereafter reversed, modified, vacated, or stayed, such reversal, modification, vacatur, or stay shall not affect (i) the validity, priority, or enforceability of any DIP Obligations incurred prior to the actual receipt of written notice by the DIP Lender of the effective date of such reversal, stay, modification or vacatur or (ii) the validity, priority or enforceability of the DIP Liens. Notwithstanding any such

reversal, stay, modification, or vacatur, any use of Cash Collateral or DIP Obligations incurred

by the Debtor to the DIP Lender, prior to the actual receipt of written notice by the DIP Lender

of the effective date of such reversal, stay, modification, or vacatur shall be governed in all

respects by the original provisions of this Final Order, and the DIP Lender shall be entitled to all

of the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code,

this Order, and pursuant to the DIP Documents with respect to all uses of Cash Collateral and all

DIP Obligations.

        (d)     Except as expressly provided in this Order, the DIP Documents, or

otherwise agreed to by the DIP Lender, the DIP Liens, the DIP Obligations, and the DIP

Superpriority Claims, and all other rights and remedies of the DIP Lender granted by this Order

and the DIP Documents shall survive, and shall not be modified, impaired, or discharged by (i)

the entry of an order converting the Case to a case under chapter 7 of the Bankruptcy Code or

dismissing the Case or by any other act or omission, or (ii) the entry of an order confirming a

plan of reorganization in the Case. The terms and provisions of this Order and the DIP

Documents shall continue in the Case and in any superseding chapter 7 cases under the

Bankruptcy Code, and the DIP Liens, the DIP Obligations, the DIP Superpriority Claims, the

other administrative claims granted pursuant to this Order, all other rights and remedies of the

DIP Lender granted by this Order, and the DIP Documents shall continue in full force and effect

until all DIP Obligations are indefeasibly paid in full in cash.

        23.    *Effect Of Stipulations On Third Parties.* The stipulations and admissions

contained in this Order, including without limitation, in paragraph 3 of this Order, shall be

binding upon the Debtor and its estate under all circumstances. The stipulations and admissions

contained in this Order, including without limitation, in paragraph 3 of this Order, shall be

binding upon all other parties in interest, including without limitation, the Committee, unless a

party in interest (including the Committee) files a complaint under Bankruptcy Rule 7001

asserting a Claim and Defense (as defined below); provided, however, any such complaint (or

motion for leave for standing with a draft complaint attached) must be filed by no later than

April 5, 2011 (the "Challenge Period"). For purposes of this Final Order, the term "Claims and

Defenses" means any adversary proceeding or contested matter (A) challenging the validity,

enforceability, priority or extent of Prepetition Loan Obligations or the liens on the Prepetition

Collateral or (B) otherwise asserting or prosecuting any actions under chapter 5 of the

Bankruptcy Code, including without limitation sections 502(d), 544, 545, 547, 548, 549 and 550

of the Bankruptcy Code, any other avoidance actions under the Bankruptcy Code, the Uniform

Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, nonbankruptcy law, or any

proceeds therefrom ("Avoidance Actions") or any other claims (including any claims under a

"lender liability" theory), counterclaims or causes of action, objections, contests or defenses

against Holdings or its agents, affiliates, subsidiaries, members, partners, investors, directors,

officers, representatives, attorneys or advisors in connection with any matter related to the

Debtor, the Notes Obligations, or the Prepetition Loan Collateral; provided that, as to the Debtor,

all such Claims and Defenses are hereby irrevocably waived and relinquished as of the Petition

Date. If no such Claims and Defenses are timely filed against Holdings, then (x) the Prepetition

Loan Obligations and the Notes Obligations shall constitute allowed claims (subject to the Roll

Up), not subject to counterclaim, setoff, subordination, recharacterization, recovery, defense, or

avoidance, for all purposes in the Case and any subsequent chapter 7 case, (y) the liens on the

Prepetition Collateral securing the Prepetition Loan Obligations shall be deemed to have been, as of the Petition Date, to be, legal, valid, binding, perfected and of the priority specified in paragraph 3 (subject to the Roll Up), not subject to defense, counterclaim, recharacterization, recovery, subordination, or avoidance, and (z) the Prepetition Loan Obligations, the Notes Obligations, and Holdings, as the case may be, and the liens on the Prepetition Loan Collateral granted to secure the Prepetition Loan Obligations shall not be subject to any other or further challenge or claim by the Committee or any other party-in-interest, and the Committee or such party-in-interest shall be enjoined from seeking to exercise the rights of the Debtor's estate, including without limitation, any successor thereto (including, without limitation, any estate representative or a chapter 7 or 11 trustee appointed or elected for the Debtor). If any such adversary proceeding or contested matter is timely filed, the stipulations and admissions contained including in paragraph 3 of this Order shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on the Committee and any other party-in-interest, except as to any such findings and admissions that were expressly and successfully challenged in such adversary proceeding or contested matter. Nothing in this Order vests or confers on any Person (as defined in the Bankruptcy Code) standing or authority to pursue any cause of action belonging to the Debtor or its estates, including without limitation, Claims and Defenses and Avoidance Actions with respect to the DIP Obligations, Prepetition Loan Obligations, the Notes Obligations, or any liens granted by the Debtor to secure any of the foregoing, or any other claims or causes of action against Holdings.

24. *Limitation On Use Of DIP Loans And DIP Collateral.* The Debtor shall use the DIP Loans solely as provided in this Order and the DIP Documents. Notwithstanding anything

herein or in any other order of this Court to the contrary, no DIP Loans, no DIP Liens, no DIP Collateral, no Cash Collateral, and no portion of the Carve Out may be used to (a) object, prosecute, contest, or raise any defense to the validity, perfection, priority, extent, or enforceability of any amount due under the DIP Documents, the DIP Obligations, the Notes Obligations, the DIP Liens, the DIP Superpriority Claims, or any other liens or claims granted under this Final Order, the Interim Order, or the DIP Documents, (b) assert any Claims and Defenses, Avoidance Actions, or any other causes of action against Holdings or its agents, affiliates, subsidiaries, directors, officers, representatives, attorneys, or advisors, (c) prevent, hinder, or otherwise delay the DIP Lender's assertion, enforcement, or realization on the DIP Collateral in accordance with the DIP Documents or this Final Order, (d) seek to modify any of the rights granted to the DIP Lender hereunder or under the DIP Documents (including the reinstatement of the adequate protection as provided herein), in the case of each of the foregoing clauses (a) through (d), without the DIP Lender's prior written consent, or (e) pay any amount on account of any claims arising prior to the Petition Date unless such payments are (i) approved by an Order of this Court and (ii) permitted under the DIP Documents (including the Budget); provided that, notwithstanding anything to the contrary herein, no more than an aggregate of $50,000 of the DIP Loans or the Carve Out may be used by any Committee to investigate (but not prosecute or challenge) the validity, enforceability, or priority of the Prepetition Loan Obligations or the Notes Obligations or the liens on the Prepetition Loan Collateral securing the Prepetition Loan Obligations, or investigate any Claims and Defenses or other causes of action or claims against Holdings; provided, further, that no funds advanced or used of the DIP

Lender's DIP Loans or Cash Collateral may be used by any party to investigate any other lien other than those asserted by Holdings.

25.     *Use of Proceeds.*  The proceeds of the DIP Loans shall be subject to, and used solely in a manner consistent with, this Order, the Budget, and the DIP Documents and, for the avoidance of doubt, shall be used solely: (a) to repay and Roll Up the Prepetition Loan, (b) to pay all interest, charges, fees, and expenses (including attorneys' fees for counsel to Holdings) related to the restructuring of the Debtor, (c) to fund postpetition operating expenses and other general corporate needs, including working capital needs, (d) to pay certain administrative expenses of the Case, including reasonable fees and expenses of professionals approved by this Court, (e) to pay court-approved critical vendors, and (f) to make such other court-approved payments, in each case, contemplated by and consistent with the Budget and this Final Order.

26.     *Proofs of Claim.*  Holdings is not required to file proofs of claim in the Case or in any successor case on account of the DIP Obligations, the Adequate Protection Obligations, the Prepetition Loan Obligations, or the Notes Obligations, and subject to paragraph 23 above, claims arising thereunder or in connection therewith shall be deemed allowed under this Final Order.

27.     *Right to Credit Bid.*  Nothing in this Final Order shall limit, modify, or abridge the right of Holdings to credit bid the DIP Loan (or the Prepetition Loan if applicable) including under section 363(k) of the Bankruptcy Code or under a plan of reorganization (including a plan of reorganization for which confirmation is sought under section 1129(b)(2)(A)(i) of the Bankruptcy Code), and such rights are expressly preserved by this Order.

28.     *Order Governs.*  In the event of any inconsistency between the provisions of this Final Order, the Interim Order, and the DIP Documents, the provisions of this Final Order shall govern.

29.     *Binding Effect; Successors And Assigns.*  The DIP Documents and the provisions of this Order, including all findings herein, shall be binding upon all parties-in-interest in the Case, including without limitation, the DIP Lender, Accord, the Committee, and the Debtor and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the Debtor, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of the Debtor or with respect to the property of the estate of the Debtor) and shall inure to the benefit of the DIP Lender and the Debtor and their respective successors and assigns; provided that, except to the extent expressly set forth in this Order, the DIP Lender shall have no obligation to permit the use of Cash Collateral or funds previously extended under the DIP Credit Agreement, or to extend any financing to any chapter 7 trustee or similar responsible person appointed for the estate of the Debtor.  Such binding effect is a benefit of the DIP Lender's bargain in connection with the DIP Facility and is an integral part of this Interim Order.

30.     *Limitation Of Liability.*  Subject to paragraph 22 of this Order, in determining to make any loan under the DIP Documents, permitting the use of Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to this Order or the DIP Documents, the DIP Lender shall not be deemed to be in control of the operations of any Debtor or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtor (as such terms, or any similar terms, are used in the United States Comprehensive

Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 et seq. as amended, or any similar federal or state statute). Furthermore, nothing in this Final Order or in the DIP Documents shall in any way be construed or interpreted to impose or allow the imposition upon Holdings any liability for any claims arising from the prepetition or postpetition activities of any of the Debtor and its affiliates (as defined in section 101(2) of the Bankruptcy Code).

31. *Effectiveness.* This Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon execution hereof as of the Petition Date, and there shall be no stay of execution of effectiveness of this Order.

32. *Notice of Professional Fees.* Commencing in March 2011, all professional advisors receiving payment of fees and expenses under the Budget and this Order (including, without limitation, advisors for the Debtors, the claims agent, advisors for the Committee, and advisors for the DIP Lender) shall by the fifth business day of each month provide to the DIP Lender with an estimate of the amount of fees incurred in the prior month for the purpose of establishing compliance with the Budget, and it shall be an Event of Default under this Final Order and the DIP Credit Agreement if any such persons fail to comply with this notice requirement.

Dated: February 11, 2011
Wilmington, Delaware

THE HONORABLE BRENDAN L. SHANNON
UNITED STATES BANKRUPTCY JUDGE